UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

LUIS ZULUAGA,
      PETITIONER

V.                  C.A. NO. 05cv 11856 NG

LUIS S. SPENCER,
      RESPONDENT

### MEMORANDUM OF LAW IN SUPPORT OF
### PETITION FOR WRIT OF HABEAS CORPUS

Comes now the Petitioner, Luis Zuluaga ("Zuluaga"), pro se, in the interests of justice and pursuant to 28 U.S.C. §§ 2244 & 2254, and hereby moves this Honorable United States District Court to grant his application for habeas relief.

In support hereof, Zuluaga asserts that the following claims, as supported by the ensuing facts and argument, establish beyond question that he has been denied the Federal Constitutional rights to due process of law and to confrontation as guaranteed him through the Sixth and Fourteenth Amendments to the United States Constitution, through each the prosecution's suppression of material evidence (App. 41 & 100 at p. 2, ¶¶ 7-8) and the trial court decision on his motion for new trial which determined that such suppressed evidence would have been inadmissible at any stage of the proceedings because it consisted of prior bad acts and was remote in time (App. 67).

### CLAIM I

IT IS A VIOLATION OF CONSTITUTIONAL MAGNITUDE
OF THE RIGHT TO DUE PROCESS OF LAW TO HAVE
SUPPRESSED FROM THE DEFENSE EVIDENCE OF THE
PROSECUTION CENTRAL WITNESS'S (THE LEAD
INVESTIGATING POLICE AUTHORITY'S) PRIOR FALSE

- 1 -

TESTIMONY BEFORE THE GRAND JURY IN AN
UNRELATED MATTER, WHEREIN THE SEVERE SANCTION
OF DISMISSAL OF INDICTMENTS OCCURRED.

### CLAIM II

IT IS A VIOLATION OF CONSTITUTIONAL MAGNITUDE
OF THE RIGHT TO CONFRONTATION
(CROSS-EXAMINATION) TO HAVE SUPPRESSED FROM
THE DEFENSE THE PROSECUTION CENTRAL WITNESS'S
(THE LEAD INVESTIGATING POLICE AUTHORITY'S)
PRIOR FALSE TESTIMONY BEFORE THE GRAND JURY
IN AN UNRELATED MATTER, AND TO BELATEDLY
APPLY AN ABSOLUTE BAR TO THE ADMISSIBILITY OF
SAME ONCE POST-CONVICTION DISCOVERY OF SUCH
EVIDENCE HAS BEEN MADE.

### AEDPA - TIMELINESS OF PETITION

Under the provisions of 28 U.S.C. § 2244(d)(1)(D), as applies to the instant petition, the AEDPA's established time limit within which to file an application for habeas relief began to run on May 7, 2004 (the date upon which Zuluaga diligently discovered new evidence)(App. 41, 67 & 100 at p. 2, ¶¶ 7-8). On June 10, 2004 Zuluaga tolled the time for filing this habeas application through his proper submission to the state court of a post-conviction motion for new trial. At that point in time, Zuluaga was then left with 330 days on the federal habeas application clock within which to file the instant application upon conclusion of all relevant state post-conviction proceedings (trial and appellate).

With the state denial of further appellate review (discretionary) by the Massachusetts Supreme Judicial Court ("SJC"), on July 5, 2005 (App. 2) the time for filing the instant application again began to run.

The instant application for habeas relief was placed within

- 2 -

the institution mailing system at M.C.I. Norfolk on or about
_____ 2005, which renders same as timely filed since it had
been so submitted with a balance of over ___ days remaining on
the applicable one-year time limit clock.

## EXHAUSTION

A Federal District Court will not entertain a habeas
application "unless the petitioner has fully exhausted his state
remedies in respect to each and every claim contained within an
application." Adelson v. DiPaolo, 131 F.3d 259, 261 (1st Cir.
1997)(citing Rose v. Lundy, 455 U.S. 509, 518-519 (1982). The
exhaustion of state remedies must include the seeking of
discretionary review in the SJC via application for further
appellate review. Mele v. Fitchburg Dist. Ct., 850 F.2d 817, 824
(1st Cir. 1988). Each and every claim presented to a state court
for review must be done in such a manner as to apprise that court
of the presence of a federal constitutional claim. See Casella v.
Clemons, 207 F.3d 18, 20 (1st Cir. 2000); Lanigan v. Maloney, 853
F.2d 40 (1st Cir. 1998). This requirement may be achieved through
such varying means as by "'(1) citing a specific provision of the
Constitution, (2) presenting the substance of a federal
constitutional claim in such a manner that it likely alerted the
state court to the claim's federal nature, (3) reliance upon
federal constitutional precedents, and (4) claiming a particular
right specifically guaranteed by the Constitution.'" Scarpa v.
DuBois, 38 F.3d 1, 6 (1st Cir. 1994)(quoting Gagne v. Fair, 835
F.2d 6, 7 (1st Cir. 1987).

However, where it may clearly be concluded that a habeas

petitioner did not abandon his federal claims within the content of the application for further appellate review to the SJC, those "pleadings and filings submitted ... to lower state courts (e.g., a motion for new trial or a brief submitted to an intermediate appellate court) provide 'a backdrop against which his later filing [must] be viewed.'" Barressi v. Maloney, 296 F.3d 48, 52 (1st Cir. 2002)(quoting Scarpa, 38 F.3d at 7).

The Court of Appeals for the First Circuit ("First Circuit") has consistently held that state case law citing to the Massachusetts Constitution, and holding therein that a provision of same affords greater protection than that afforded by the United States Constitution, necessarily subsumes the federal standard of review. See e.g. Phoenix v. Matesanz, 189 F.3d 17, 26 n. 4 (quoting Scarpa, 38 F.3d at 7 n. 4); compare Commonwealth v. Richard, 398 Mass. 392, 393 (1986)(Mass.Const., art. 12 and U.S.Const, Amend. VI); and Attorney General v. Colleton, 387 Mass. 790, 796 (1982)(Mass. Const. art. 12 and U.S.Const., Amend. V). Furthermore, in Early v. Packer, ___ U.S. ___, 123 S.Ct. 362 (2003), the Supreme Court stated that it is not the citation to "controlling Supreme Court precedent" which provides the triggering of or compliance with the AEDPA's various provisions, but mere reliance upon or application of a rule of law "set forth in [that Court's] cases" is sufficient. Id. at 365 (quoting Williams v. Taylor, 529 U.S. 362, 405-406 (2000).

In the case at bar, Zuluaga has exhausted those claims herein presented, as follows:

- 4 -

CLAIM I

With respect to the denial of Zuluaga's right to due process of law through the prosecution's suppression of material evidence (App. 41, 67 & 100 at p. 2, ¶¶ 7-8), Zuluaga raised the federal context of said claim by direct citation to the U.S.Const., Amend. XIV and Mass.Const., Decl. of Rts., art. 12 (App. 103), by claiming a specific right to the disclosure of evidence as per defense request for same (App. 98 & 103), and by citation to the federal cases of Kyles v. Whitley, 514 U.S. 419 (1995)(holding that prosecutor responsible for disclosure of evidence; and discussing how undisclosed evidence may have affected prosecution's case and presentation of defense) and Brady v. Maryland, 373 U.S. 83 (1963)(discussing obligation of state to disclose favorable evidence), as well as the state cases of Commonwealth v. Gallarelli, 399 Mass. 17 (1987)(how disclosure of evidence would affect defense preparation or handling of case) and Commonwealth v. Ellison, 376 Mass. 1, 22 n. 9 (1978)(discussing types of evidence subject to Brady obligation)(App. 103).

This claim was first raised in a post-conviction motion for new trial (App. 67), on direct appeal (App. 1 & 103), and thereafter within an application for further appellate review (App. 2).

CLAIM II

With respect to the denial of Zuluaga's right to confrontation in the form of cross-examination achieved through the prosecution's suppression of material evidence (App. 41, 67 &

- 5 -

100 at p. 2, ¶¶ 7-8) and the motion court holding of said evidence's inadmissibility because it was comprised of prior bad acts and too remote in time (App. 67), Zuluaga raised the federal context of said claim by direct citation to the U.S.Const., Amend. VI and Mass.Const., Decl. of Rts., art. 12 (App. 103), by claiming the specific right to complete cross-examination to bring to the jury's attention material facts in issue (App. 103), and by citation to the federal cases of Delaware v. Van Arsdall, 475 U.S. 673 (1986)(holding that right of confrontation applicable to state prosecutions and importance of right to "exposure of a witness' motivation in testifying") and Davis v. Alaska, 415 U.S. 308 (1974)(discussing standard of prejudice required when cross-examination is constitutionally restricted), as well as the state cases of Commonwealth v. Grenier, 415 Mass. 680 (1993)(discussing importance of ability to expose witness' motivation to testify, with citation to Sixth Amendment and art. 12); Commonwealth v. Tucceri, 412 U.S. 401 (1992)(citing Davis, 415 U.S. at 318); and Commonwealth v. Bohannon, 376 Mass. 90 (1978)(discussing on point exception to Massachusetts rule of excluding prior bad act evidence)(App. 103).

This claim was first raised concerning the prosecution's suppression resulting in unconstitutional restriction of confrontation in a post-conviction motion for new trial (App. 67), on appeal from the denial of same, as well as the motion court's erroneous holding on the admissibility of said suppressed evidence (App. 1 & 103), and thereafter within an application for further appellate review (App. 2).

- 6 -

## LACK OF PROCEDURAL BAR TO REVIEW

Each the motion and appellate courts' decisions (App. 67 & 1, respectively), the last reasoned state court opinions in this case, "appear[] to rest primarily on federal law, or to be interwoven with the federal law, and [] the adequacy and independence of any possible state law ground is not clear from the face of the opinion[s], [and it should be] accept[ed] as the most reasonable explanation that the state court[s] decided the case the way [they] did because [they] believed that federal law required [them] to do so." Michigan v. Long, 463 U.S. 1032, 1041-1042 (1983)(emphasis added).

## STANDARD OF REVIEW

Under the provisions of 28 U.S.C. § 2254(d), Zuluaga must establish that any applicable state court decision rendered with respect to the raised federal claims has resulted in a decision that involves either an "unreasonable application" of law established by the Supreme Court or that such decision was achieved "contrary to" law as established by the Supreme Court. Accord Williams, supra, 529 U.S. at 404-405.

However, as is exhibited through each of the hereto relevant decisions (App. 67 & 1, respectively), the raised federal context of the two claims went largely unaddressed by each of the state courts which, therefore, should entitle each of the claims to de novo review by this Honorable Court. Accord DiBenedetto v. Hall, 272 F.3d 1, 6 (1st Cir. 2001).

- 7 -

## STATEMENT OF PRIOR PROCEEDINGS

Petitioner, Luis Zuluaga ("Zuluaga"), was indicted by a sitting of the Middlesex County Grand Jury on April 3, 1993 for the offenses of (1) trafficking in more than 200 grams of cocaine in Lowell, Massachusetts ("MA"), (2) trafficking in more than 200 grams of cocaine in Dracut, MA, and (3) conspiracy to traffic in cocaine (App. 3-5). After initial court hearings on various motions to suppress the evidence (Lauriat, J.), Zuluaga was tried by jury at the Middlesex County Superior Court (Whitehead, J.) in a trial which lasted from October 3, 1994 through October 19, 1994 (App. 5-11).

During the course of trial, and pursuant to a motion for directed verdict, the court entered a not guilty finding for Zuluaga on the charge of trafficking in cocaine in Dracut (App. 8). On October 19, 1994 the jury returned a verdict of guilty on the charge of trafficking in cocaine in Lowell, while the charge of conspiracy to traffic in cocaine was filed without a change of plea (App. 8). Zuluaga was thereafter sentenced to a term of not less than 18 years nor more than 20 years in the state prison. A timely appeal was filed, and Zuluaga's conviction was affirmed by the Appeals Court in a Rule 1:28 unpublished decision (Dreben, Gillerman & Flannery, JJ.) on October 10, 1997 (App. 12).

On June 26, 2000 Zuluaga filed a pro se styled motion for new trial which alleged various ineffective assistance of counsel claims. The trial court denied this motion, by endorsement only, on October 3, 2000. After timely notice of appeal, the trial court's action was affirmed by the Appeals Court in another Rule

1:28 unpublished decision on January 3, 2002 (Lenk, Gillerman & Cohen, JJ.).

On June 10, 2004 Zuluaga filed a second pro se styled motion for new trial pursuant to Mass.R.Crim.P. 30(b) based upon the new discovery of prosecution suppressed impeachment evidence (App. 41), as well as a pro se styled motion to vacate conviction pursuant to Mass.R.Crim.P. 25(b). The trial court denied each of these motions on July 2, 2004 (App. 67-68), and a timely notice of appeal was filed.

The Appeals Court affirmed the trial court action by Rule 1:28 unpublished decision on May 9, 2005 (Berry, Dreben & Doerfer, JJ.)(App. 1).

### FACTS RELEVANT TO HABEAS REQUEST

Zuluaga's defense was predicated upon the assertion that the contraband by which he was eventually charged and convicted had been planted in the basement of 258 Merrimac Street by the state informant Brathwaite (see Commonwealth v. Zuluaga, Mass.App.Ct., No. 96-P-1 (October 10, 1997), for discussion of relevant facts (App. 12). It was further asserted that Brathwaite had undertaken such action at the behest of members of the Lowell Police Department (App. 69-97; select trial transcripts setting forth defense). It was also argued that Massachusetts State Trooper John R. Sprague ("Sprague"), the lead investigation officer, was somewhat complicit in this planting of evidence and in thereafter causing Brathwaite not to testify for the defense relative to such factors (App. 90-97).

On May 7, 2004 Zuluaga discovered previously undisclosed

- 9 -

evidence of a material and impeaching nature pertinent to previous false testimony having been rendered to a grand jury by the very same lead investigator in his own case (App. 41). This apparent suppression of evidence by the state occurred despite specific defense discovery request long prior to trial (App. 98). Upon presentation of this newly-discovered evidence to defense counsel who had represented Zuluaga at trial, Russell C. Sobelman, Esquire, said counsel proffered via affidavit that such evidence would have been important in his presentation of the defense at each the pre-trial and trial hearing stages (App. 99).

Zuluaga presented the newly-discovered evidence to the trial court in the form of a post-conviction motion under Mass.R.Crim.P. 30, citing therein and by affidavit (App. 100) to seven varied, yet non-exhaustive, areas of case preparation and defense presentation where such evidence would have been of impact. This same argument was thereafter presented to the Appeals Court (App. 103).

The newly-discovered evidence presents in the form of a Superior Court Order on a defense motion to dismiss, in the matter of Commonwealth v. Weichell, Nor.Sup.Ct., No. NOCR 76394 (February 23, 1981)(App. 41), wherein the court (Mulkern, J.) had determined that the thereto relevant investigation State Trooper -- the very same Tpr. Sprague central to the instant case -- had so subverted the demands of justice through the employment of false testimony at the pertinent grand jury proceeding that the resulting indictments had to be dismissed.

The grand jury testimony of the trooper was, for whatever

> reason, seriously in error in material matters. His
> misleading testimony had to leave the clear impression on
> the grand jury that four witnesses had made rather firm
> identifications of the defendant both from a photographic
> array and in a quasi-lineup situation. This was simply not
> so. ...
> The integrity of the grand jury proceeding here was impaired
> to the point that the defendant was deprived of an
> impartial, accurate presentment to the grand jury.

Order at 22, 23 (App. 47-50; see also App. 51, relevant grand
jury minutes).

Although the trial court here had determined the proffered,
previously undisclosed evidence to be newly-discovered, the court
went on to opine that such evidence was inadmissible because it
was comprised of prior bad acts and too remote in time (new
evidence related facts occurring some 12 years prior to Zuluaga's
prosecution)(App. 67). The Appeals Court adopted the motion
court's reasoning (App. 1). Neither decision, however, makes
reference to any case citation for support, and neither gives any
indication of consideration having been given as to what defense
counsel may have been able to accomplish in defense preparation,
strategy, and employment had such newly-discovered evidence been
properly and timely disclosed.

It is of particular import that Zuluaga had prosecuted
substantial suppression efforts detailing various Franks (Franks
v. Delaware, 438 U.S. 154 (1978) violations having been committed
by the very same Sprague (App. 112). The pre-trial motion court
determined that Sprague's affidavit in support of a body wire and
search warrants "did contain a misstatement of fact" (App.
135-160, at 147). Such a finding, however, was not instrumental
in said court's initial allowance of certain suppression (App.

156-157), and the court ultimately reversed itself (App. 161). Additionally, the state's relied upon cooperating informant, Brathwaite, eventually refused to testify at either the suppression or trial stages, and such factors evolved into a matter of fervent dispute because, at one point, Brathwaite was asserted to have agreed to testify for the defense (App. 28-35; direct appeal decision; and see App. 69-97).

## SUMMARY OF ARGUMENT

Zuluaga claims the denial of his constitutional right to due process of law achieved through the state's suppression of material evidence (pp. 14-17).

In a case where the state's theory hinged upon the testimony of a crucial investigating witness, Sprague, the prosecution suppressed material evidence of that witness's past prevarication before a grand jury which had ultimately resulted in dismissal of the thereby obtained indictments (App. 41-66). The suppression of this evidence occurred despite specific request by defense counsel (App. 98) and, upon eventual presentation of same to him post-discovery, said counsel provided affidavit stating that the newly-discovered evidence would have been important to his defense preparations and handling of the case (App. 99; see also App. 100 - affidavit of Zuluaga). However, it remains entirely unknown as to what additional uses or discoveries may have been made by the defense had it timely received the newly-discovered evidence.

Although the trial court, in evaluating Zuluaga's presentation of the at issue evidence in a motion for new trial,

- 12 -

determined the evidence to be newly-discovered, it went on to hold that same would have been inadmissible as prior bad act evidence and because it was too remote in time (App. 67). The Appeals Court adopted the trial court's reasoning in affirming that court's denial of same (App. 1).

Zuluaga further claims the denial of his constitutional right to confrontation in the form of an opportunity at effective cross-examination of the key prosecution witness, Sprague, due to the state's suppression of material evidence (pp. 18-23).

This case originated through alleged incriminating information furnished by an informant, Brathwaite, to Sprague (App. 12). Brathwaite, however, refused to testify at any stage of the proceedings, an issue which evolved into fervent dispute because it was substantially asserted that Brathwaite had informed the defense that he would testify in its behalf as to matters incriminating investigating authorities in the planting of that very evidence through which Zuluaga would eventually be convicted (App. 28-35; and see App. 69-97 - select transcript coverage detailing Zuluaga's defense).

Sprague was the only witness who possibly could testify as to the complete revelations of the informant Brathwaite, thus rendering the admissibility of the newly-discovered evidence of Sprague's past prevarication to a grand jury concerning alleged information culled through his investigation (App. 41-66) a matter of necessity in order to meet constitutional demands of justice.

The application for habeas relief should be granted (p. 23).

### REASONS FOR GRANTING HABEAS PETITION

The granting of the habeas petition is here appropriate because material evidence of an impeaching nature was suppressed from the defense despite specific requests, and the conclusion reached by the motion court and adopted by the Appeals Court conflicts with prior holdings of the Supreme Court of the United States.

> I. IT IS A VIOLATION OF CONSTITUTIONAL MAGNITUDE OF THE RIGHT TO DUE PROCESS OF LAW TO HAVE SUPPRESSED FROM THE DEFENSE EVIDENCE OF THE PROSECUTION CENTRAL WITNESS'S (THE LEAD INVESTIGATING POLICE AUTHORITY'S) PRIOR FALSE TESTIMONY BEFORE THE GRAND JURY IN AN UNRELATED MATTER, WHEREIN THE SEVERE SANCTION OF DISMISSAL OF INDICTMENTS RESULTED.

Zuluaga posits that this Honorable Court's weighing of the matter centering on the discovery of that evidence here at issue (App. 41) should not rest solely upon his limited pro se means and assertions; it is contended that this Honorable Court must consider just what competent counsel may have been able to accomplish with such highly impeaching evidence had same not been suppressed during pre-trial discovery (see App. 99 - affidavit of defense counsel). Accord Kyles v. Whitley, 514 U.S. 419, 441-446 (1995)(discussion of how disclosure of evidence would have affected the prosecution's case and presentation of defense had it been available to competent counsel); Commonwealth v. Gallarelli, 399 Mass. 17 (1987)(same).

There are few more important examples of fundamental protection to a criminal defendant than the rights afforded by the confrontation clauses of the Federal and State Constitutions,

- 14 -

which do a great deal more than guarantee the right of cross-examination. U.S.Const., Amend. VI; Mass.Const., Decl. of Rts., Art. 12. The confrontation clause is comprised of several additional and fundamental components which protect the defendant and the trial court's search for the truth by "affording the accused an opportunity for face-to-face contact with adversarial witnesses at trial; by ensuring that a witness will give his statements under oath, which impresses upon him the seriousness of the proceedings and importance that he testify truthfully; by forcing a witness to submit to cross-examination, a practice designed to elicit the truth; and by aiding the jury in assessing credibility of a witness by observing his demeanor on the stand." Commonwealth v. Bergstrom, 402 Mass. 534, 543 (1988)(quoting California v. Green, 399 U.S. 149, 158 (1970).

Under Massachusetts jurisprudence, even before the confrontation clause cases, it had been held that "a fair and full cross-examination to develop facts in issue or relevant to the issue is a matter of absolute right and is not a mere privilege to be exercised at the sound discretion of the presiding judge, and the denial of the right is prejudicial error. This principle necessarily encompasses the right to prove statements inconsistent with a [witnesses] testimony, and cannot be denied by the judge when the testimony bears upon a material and not collateral issue in the case. ... Here, the principal contested issue at trial concerned [Sprague's] ability [to truthfully relate the results of his drug investigation and Zuluaga's alleged involvement therein]." Commonwealth v. Allen,

- 15 -

22 Mass.App.Ct. 413, 420, 421 (1986)(citations and internal quotation marks omitted).

The Court noted in Alford v. United States, 282 U.S. 687 (1931), as follows:

> It is the essence of a fair trial that reasonable latitude be given the cross-examiner, even though he is unable to state to the court what facts a reasonable cross-examination might develop. Prejudice ensues from a denial of the opportunity to place the witness in his proper setting and put the weight of his testimony and his credibility to a test, without which the jury cannot fairly appraise them.

Alford, 282 U.S. at 692.

Thus, the due process violation achieved through the prosecutor's failure to turn over to the defense the specifically requested records concerning the central prosecution witness (App. 98), Sprague, particularly those comprised of his prior false testimony before the Norfolk County Grand Jury which resulted in dismissal of indictments (App. 41), was the unconstitutional restriction of Zuluaga's ability to exercise his right to cross-examination and to prepare a defense. Under such circumstances, a new trial should be granted even absent proof of prejudice. See Commonwealth v. Tucceri, 412 Mass. 401, 406 n. 4 (1992)("proof of prejudice ... unnecessary when the scope of cross-examination ... unconstitutionally restricted")(citing Davis v. Alaska, 415 U.S. 308, 318 (1974).

There can be no argument as to whether the non-disclosed evidence falls under the purview of Brady v. Maryland, 373 U.S. 83 (1963), and its progeny. Compare Commonwealth v. Ellison, 376 Mass. 1, 22 n. 9 (1978)("[M]aterial may be within Brady although it is not absolutely destructive of the Commonwealth's case or

highly demonstrative of the defendant's innocence. The Brady obligation comprehends evidence which provides some significant aid to the defendant's case, whether it furnishes a corroboration of the defendant's story, calls into question a material, although not indispensable, element of the prosecution's version of events, or challenges the credibility of a key prosecution witness.")(emphasis added). Ultimately, Zuluaga was deprived of having the jury exercise the ability to perform its most basic of trial process functions; evaluating the credibility of the prosecution's key witness during cross-examination on the stand in open court.

Zuluaga argues that the suppression from the defense of prior false testimony on the part of the prosecution's key witness, as here done, amounts to prejudice of extreme magnitude. This is so because suppression of information which brings to light the fact that one might be a either perjurer or even motivated by malice, intolerance or bias is the very reason that the protection afforded by the Sixth and Fourteenth Amendments exist. It is a violation of due process of law to hinder the ability of the defense to answer the charges. See, e.g., Faretta v. California, 422 U.S. 806, 818 (1975)(dictum)(the Sixth Amendment rights to compulsory process, confrontation, and notice combine to constitutionalize the right in an adversary trial to make a defense).

II. IT IS A VIOLATION OF CONSTITUTIONAL
MAGNITUDE OF THE RIGHT TO CONFRONTATION
(CROSS-EXAMINATION) TO HAVE SUPPRESSED FROM
THE DEFENSE THE PROSECUTION CENTRAL WITNESS'S
(THE LEAD INVESTIGATING POLICE AUTHORITY'S)
PRIOR FALSE TESTIMONY BEFORE THE GRAND JURY
IN AN UNRELATED MATTER, AND TO BELATEDLY
APPLY AN ABSOLUTE BAR TO THE ADMISSIBILITY OF
SAME ONCE POST-CONVICTION DISCOVERY OF SUCH
EVIDENCE HAD BEEN MADE.

The Court has held, in Delaware v. Van Arsdall, 475 U.S 673

(1986), as follows:

The Confrontation Clause of the Sixth Amendment guarantees
the right of an accused in a criminal prosecution "to be
confronted with the witnesses against him." The right of
confrontation, which is secured for all defendants in state
as well as federal criminal proceedings, Pointer v. Texas,
380 U.S. 400 (1965), "means more than being allowed to
confront the witness physically." Davis v. Alaska, 415 U.S
at 315. Indeed, "'[t]he main and essential purpose of
confrontation is to secure for the opponent the opportunity
of cross-examination.'" Id. at 315-316 (quoting 5 J.
Wigmore, Evidence § 1395, p. 123 (3d ed. 1940)(emphasis in
original). Of particular relevance here, "[w]e have
recognized that the exposure of a witness' motivation in
testifying is a proper and important function of the
constitutionally protected right of cross-examination."
**Davis, supra, at 316-31⇧ (citing Green v. McElroy, 360 U.S.
474, 496 (1959).**

Van Arsdall, 475 U.S at 678-679.

Although the Court of Appeals for the First Circuit, in

Turner v. Fair, 617 F.2d 7 (1980), has made note that "[i]n

Massachusetts, the rule has been that a witness cannot be asked

on cross-examination, in order to affect his credibility, about

his part in transactions irrelevant to the issue on trial[,]" id.

at 11 (quoting Commonwealth v. Turner, 371 Mass. 803, 809-810

(1977), such an exception to the right of confrontation should

not be deemed to apply in the case at bar.

In Massachusetts, Zuluaga has a right to reasonably

- 18 -

cross-examine a prosecution witness regarding possible bias or interest in the case, including institutional loyalty. Commonwealth v. Kouljouris, 406 Mass. 281, 284-289 (1989). This is so regardless of how remote such a possibility may be. Commonwealth v. Henson, 394 Mass. 584, 587 (1985)("when a possibility of bias exists ... even if remote, the evidence is for the jury to hear and evaluate"). And, evidence of bias cannot be considered cumulative if it shows a different cause of bias and reason to fabricate. Commonwealth v. Stockhammer, 409 Mass. 867, 879 (1991)

> Because bias, prejudice, and motive to lie are not considered collateral matters, they may be demonstrated by extrinsic proof as well as on cross-examination. United States v. Abel, 469 U.S. 45, 52 (1984)("The 'common law of evidence' allowed the showing of bias by extrinsic evidence, while requiring the cross-examiner to 'take the answer of the witness' with respect to less favored forms of impeachment.") ... Cross-examination to show bias, prejudice or interest) is a matter of right that in criminal cases assumes constitutional dimension under the confrontation clause of the Sixth Amendment of the United States Constitution and art. 12 of the Declaration of Rights.[] Commonwealth v. Grenier, 415 Mass. 680, 686 [] (1993)(& citations). The defendant has the right to bring to the jury's attention any "circumstances which may materially affect the testimony of an adverse witness which might lead the jury to find that the witness is under an 'influence to prevaricate.'" Commonwealth v. Haywood, 377 Mass. 755, 760 [] (1979)(citation omitted).

P. J. Liacos, Massachusetts Evidence § 6.9, pp. 299-300 (6th ed. 1994)(footnote omitted; emphasis added).

Indeed, a prosecution witness may also be impeached by evidence of his bad reputation for truth and veracity in his business community. G.L.c. 233, § 21A; see Commonwealth v. Belton, 352 Mass. 263, 269 (1967)("evidence of ... reputation among those with whom 'he has habitually associated in his work

- 19 -

or business shall be admissible'")(citation omitted). In analogy, "the [witness's] use of his position to guarantee [indictments] ... and thus to guarantee [convictions] ... [may be taken to] provide[] the common or general scheme underlying [the Weichell (source of false tesimony; see App. 41) and the instant prosecution]." Commonwealth v. Schoening, 379 Mass. 234, 242-243 (1979)("evidence tending to show that a [witness] committed [acts] unrelated to the offense [at hand] is competent where such evidence has a tendency to show a common scheme").

Moreover, it is of particular import to the circumstances of the instant case to consider the SJC's reasoning in Commonwealth v. Bohannon, 376 Mass. 90 (1978). In Bohannon, the SJC noted that "[i]n general, evidence of prior bad acts may not be used to impeach a witness's credibility.[] ... Evidence of prior false allegations has been excluded as a consequence of this rule." Id. at 93. (footnote and citations omitted). Yet, in a holding clearly here applicable, the SJC went on further to state that "[i]n the Miller [v. Curtis, 158 Mass. 127 (1893)] opinion, however, we indicated that the rule was not inflexible and that there may be cases presented in which such evidence might be competent. Miller v. Curtis, supra, 158 Mass. at 131. ... When evidence concerning a critical issue is excluded and when that evidence might have had a significant impact on the result of the trial, the right to present a defense has been denied. See Chambers v. Mississippi, 410 U.S. 284 (1973)[and cases cited]." Bohannon, 376 Mass. at 93 (emphasis added).

The circumstances of the instant case present as being

indistinguishable from those subject to the exception discussed
in Bohannon, particularly in relation to those matters concerning
Sprague's search warrant application affidavit averments, his
testimony about the out-of-court assertions of the prosecution's
alleged cooperating informant, and Sprague's related observations
during the course of his alleged drug deal operation
surveillance.

As analogous:

> The credibility of [Sprague] was the critical issue in the
> present case. The central issue in dispute was whether
> [Sprague] had obtained incriminating evidence from the
> non-testifying informant Brathwaite concerning illegal
> activities by Zuluaga], and [Sprague] ... was the only
> Commonwealth witness on the issue of [the informant's
> complete statements or activities]. ... Evaluations of
> credibility are, of course, within the exclusive province of
> the trier of fact. [Zuluaga would have] sought by his
> [impeachment] to bring to the jury's attention the fact that
> [Sprague] had made false allegations [concerning
> incriminating evidence culled from investigation] ... in the
> past. Evidence of prior false accusations [concerning
> incriminating evidence] ... might itself have seriously
> damaged [Sprague's] credibility. Moreover, in this case the
> possibility that the evidence might have had a significant
> impact on the issue of credibility is enhanced by the fact
> that [Sprague's search warrant application affidavit
> contained] inconsistent [allegations concerning facts
> alleged to have been afforded to him by the prosecution's
> non-testifying informant]. ... Thus the proffered evidence,
> if believed, might have had a significant impact on the
> issue [of Zuluaga's alleged drug activity involvement] and
> consequently on the outcome of the trial.

Bohannon, 376 Mass. at 93-94 (citations omitted; emphasis added).
See also Napue v. Illinois, 360 U.S. 264, 269 (1959)("jury's
estimate of the truthfulness and reliability of a given witness
may well be determinative of guilt or innocence, and it is upon
such subtle factors as the possible interest of the witness in
testifying falsely that a defendant's life or liberty may

depend.").

Zuluaga, in seeking a new trial based upon the discovery of serious impeachment evidence against the key prosecution witness that was not furnished by the prosecution prior to trial despite specific request (App. 98), and which itself "cannot be [deemed] cumulative [because] it goes to an issue that was not known at the time of trial[,]" Norton v. Spencer, ___ F.3d ___, U.S.Ct.App., No. 03-1571, slip op. at 11 (1st. Cir. October 30, 2003), "need only demonstrate that a substantial basis exists for claiming prejudice from the nondisclosure." Tucceri, 412 Mass. at 412 (citing Gallarelli, 399 Mass. at 20-21 (quoting United States v. Agurs, 427 U.S. 97, 106 (1976). Zuluaga would further posit that this Honorable Court's "task is to decide what effect the omission might have had on the jury [and pre-trial motion court] ... not what, if any, impact the late disclosed evidence has on the [Court's] personal assessment of the trial record[, but] ... what would have happened if the prosecution had fulfilled its pretrial duty to disclose the [impeachment] evidence and the jury [and motion court] had [learned of Sprague's past prevarication of material underlying aspects of a prosecution's case purported to have been culled from his investigation]. Tucceri, 412 Mass. at 411; see again Kyles v. Whitley, 514 U.S. at 441-446 (how disclosure of evidence would have affected defense preparation and prosecution's case).

Trooper Sprague, and no other, was the sole source of information concerning the complete asserted relations of the non-testifying informant Brathwaite pertinent to any alleged

- 22 -

involvement of Zuluaga in a drug enterprise both prior to and throughout the authority-initiated undercover operation of April 2 & 3, 1993. Given the fact of Brathwaite's refusal to testify at any stage of the trial court proceedings, and the further dispute surrounding Brathwaite's asserted desire to testify for the defense (App. 69-97), the highly impeaching nature of the newly-discovered evidence, had it been properly disclosed during the pre-trial discovery process, would have had an invaluable-to-the-defense effect on its ability to prepare as well as each the motion court's, trial court's, and jury's considerations in this case. The credibility of Sprague was the critical issue in the case at bar; his affidavit attestations had been proven to contain error and his testimony before both the motion and trial courts was in dispute. The newly-discovered evidence should be deemed material and admissible. See again Bohannon, 376 Mass. at 93-94; Napue, 360 U.S. at 269.

## CONCLUSION

For the foregoing reasons habeas relief should be granted in this case.

Dated: /0-//-05

Respectfully submitted,

Luis Zuluaga, pro se
Post Office Box 43
Norfolk, MA    02056

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CLERK'S NOTICE

This document can not be scanned due to its size, or the way in which it was bound.

The original is available for viewing in the Clerk's Office.