UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

```
                          )
                          )
LUIS ZULUAGA,             )
                          )
        Petitioner        )
  v.                      )        CIVIL NO. 05-11856-NG
                          )
LUIS SPENCER,             )
                          )
        Respondent        )
                          )
```

**PETITIONER'S SUPPLEMENTAL MEMORANDUM
OF LAW IN SUPPORT OF PRO SE PETITION FOR
WRIT OF HABEAS CORPUS PURSUANT TO 28 U.S.C. §2254**

### Introduction

The petitioner, through undersigned counsel, respectfully submits this memorandum of law to supplement his initial petition for a writ of habeas corpus pursuant to 28 U.S.C. §2254 which was filed on a *pro se* basis.

### Statement of Claims

The original petition alleges three claims for issuance of the writ. Claims one and two are predicated on a Brady non-disclosure violation based on the discovery of new exculpatory evidence, viz. information that an important witness, case agent Massachusetts State Trooper John R. Sprague (Sprague), gave "flagrantly false testimony" in an unrelated 1981 first degree murder case which resulted in the extraordinary dismissal of an indictment for egregious abuse of the grand jury process. Claim one is couched as a violation of Due Process which prevented the

petitioner from fully presenting a defense.  Claim two asserts a
Sixth Amendment violation because the non-disclosure of this
prior bad act evidence deprived petitioner of his right to fully
cross-examine Sprague at both a pre-trial motion to suppress and
the trial itself.  Claim number three has previously been
dismissed by this Court as untimely and will not be discussed
here.  Docket entry (unnumbered), Feb. 10, 2006.

## Statement of the Case

Petitioner was indicted in the Middlesex Superior Court,
Massachusetts on April 3, 1993 in two separate counts for
trafficking over 200 grams of cocaine on that date in Lowell and
Dracut, Massachusetts, Mass. Gen. L. c. 94C, §32E(b)(4), as well
as one count of conspiracy to traffick in cocaine.  Id. §40.
There were two co-defendants, Arlon Osario (Osario) and Hugo
Restrepo (Restrepo).  Petitioner's pretrial motion to suppress
conversations intercepted pursuant to a warrant issued under
Massachusetts statutory, id. c. 272, §99, and common law,
Commonwealth v. Blood, 400 Mass. 61, 507 N.E.2d 1029 (1987), see
Commonwealth v. Zuluaga, 43 Mass.App.Ct. 629, 634, 686 N.E.2d 463
(1997), (Zuluaga I) was denied.  After a 12 day jury trial
petitioner was convicted on one count of trafficking in Lowell.
His acquittal on the Dracut trafficking count was directed by the
court which also placed the conspiracy count on file.  See
Commonwealth v. Simmons, 448 Mass. 687, 863 N.E.2d 549 (2007).

He received a sentence of 18 to 20 years to MCI Cedar Junction on October 19, 1994.  His direct appeal and an application for further appellate review were denied by the Massachusetts Appeals Court on October 17, 1997, Zuluaga I, supra, and the Supreme Judicial Court, No. FAR-09481, Commonwealth v. Zuluaga, 436 Mass. 1102, 766 N.E.2d 70 (2002)(Table) on November 20, 1997, respectively.

A motion for new trial based on ineffective assistance of counsel was filed in 2000, and denied by the trial judge (Whitehead, J.).  The denial was affirmed on appeal to the Appeals Court, Commonwealth v. Zuluaga, 53 Mass. App. Ct. 1110 (Table), 760 N.E.2d 814 (2002)(Unpublished), (Zuluaga II) and further appellate review was denied on February 27, 2002. Commonwealth v. Zuluaga, 436 Mass. 1102(Table) 766 N.E.2d 70 (2002).

On June 7, 2004 petitioner filed a second motion for new trial in the superior court based on the instant claims.  Judge Whitehead denied the motion, without an evidentiary hearing, in a four sentence docket notation dated July 2, 2004.  Respondent's Supplemental Answer ("Supp. Answer"), Tab 10, Record Appendix ("R.") 10, 316.  The Appeals Court affirmed on appeal by simply referring to the notation and adopting its reasoning. Commonwealth v. Zuluaga, 63 Mass. App. Ct. 1114 (Table), 826 N.E.2d 794 (2005)(Unpublished)(Zuluaga III).  Further appellate

3

review was denied without comment on July 5, 2005.  <u>Commonwealth</u>

v. <u>Zuluaga</u>, 444 Mass. 1106, 830 N.E.2d 1088 (Table)(2005).

The *pro se* petition was filed with this Court on September

14, 2005.  Docket entry # 1. ("D.-1.").

<u>**Statement of Relevant Facts**</u>

**Background**

For a basically accurate summary of the facts adduced at the

hearing on petitioner's motion to suppress and trial, the Court's

attention is directed to the Appeals Court's decision on direct

appeal, <u>Zuluaga I</u>, <u>supra</u>, 43 Mass. App. Ct. 629, 630-633, 686

N.E.2d 463 (1997), Supp. Answer, Tab 4, affirming both the denial

of the motion and petitioner's subsequent conviction.

The following facts are pertinent to the instant petition.

In his motion to suppress, petitioner asserted a lack of probable

cause for issuance of the body wire warrant and alleged there

were certain knowing and intentional misrepresentations in the

affidavit filed in support thereof.  <u>Id</u>. Tab 2, Supplemental

Record Appendix ("Supp. R.A."), pp. 45-49, 51.  Most of the

alleged misrepresentations were not germane because made by the

named informant in this case, Kevin Brathwaite (Brathwaite), and

only repeated by the affiant.  <u>Franks</u> v. <u>Delaware</u>, 438 154, 163,

171, 98 S.Ct. 2674 (1979).  Petitioner did claim, however, that

Yasser Funez (Funez) was not his brother, that he had never

visited Funez at M.C.I. Gardner, nor much less met Brathwaite

4

during such visits or offered to distribute cocaine with him upon
his release, Supp. Answ., Tab 2, Supp. R.A., 48, ¶¶ 5, 7-8, and
that visiting records from Gardner confirmed that he had never
been to that prison.  Id. ¶8.  Thus, he requested an evidentiary
hearing under the rule of Franks v. Delaware, supra.
Respondent's Second Supplemental Answer, Pretrial Hearing,
December 9, 1993, Tr. II, 5:3. ("2d Supp. Answer, PT. Hrg.").

Petitioner also alleged, by way of his counsel's affidavit,
that Sprague had agreed to pay Brathwaite $1,000 for his
cooperation.  Supp. Answer, Tab 2, Supp. R.A. 51.

Although finding that petitioner had failed to make a
"substantial preliminary showing" that any of Sprague's
statements were intentionally and knowingly false or made with a
reckless disregard for the truth, id. 69, the motion judge
nevertheless conducted a "Franks-type" evidentiary hearing,
"...pursuant to its discretionary authority.", and "...because
Zuluaga had shown that Sprague's affidavit did contain a
misstatement of fact...and, in any event, there was no
confidential informant involved in the case.", id., (citations
omitted).

**Affidavit of Trooper Sprague.**

A copy of Sprague's affidavit is reproduced in the present
record.  Supp. Answer, Tab 2, Supp. R.A., 25-29. In pertinent
part, he averred that Brathwaite had called him on the telephone

on March 30, 1993 indicating that he had information about a
cocaine supplier in Lowell. Id. 25, ¶ 2.  Sprague told Brathwaite
to come to his office at the Middlesex County District Attorney's
office.  They met there later that day.  According to the
affidavit, Brathwaite said that while he was incarcerated at
M.C.I. Gardner from January until December 1992, he had gotten to
know Funez.  Brathwaite claimed that Funez was the petitioner's
brother and that Funez told him that the petitioner was a large-
scale cocaine dealer operating out of his travel agency located
at 260 Merrimack Street in Lowell.  Sprague said that Brathwaite
said that he had actually met the petitioner and that they had
discussed the drug business on two occasions when petitioner was
at Gardner visiting his brother, Funez.  Id., 26, ¶ 3.
Brathwaite claimed that after his release he had called the
telephone number petitioner had given him, 508-937-5555, and
talked further about possibly doing business with him for
cocaine.  Sprague stated that Brathwaite said that he and
petitioner had spoken on the telephone four times in recent weeks
and that petitioner had offered to sell him two kilograms of
cocaine for $24,000 each.  Id. ¶ 4.

Sprague told Brathwaite to arrange a meeting with petitioner
at the travel agency.  On April 2 Sprague parked his car near the
travel agency at 260 Merrimack Street, watched as Brathwaite
entered the storefront office and through the front window saw

him meet for a few minutes with a man later identified as the petitioner. Id. 27, ¶ 6. Afterward, Sprague alleged, Brathwaite told him that he had made an agreement with the petitioner to purchase one kilogram of cocaine for $28,000 the following day at approximately 11 A.M. The money would be delivered to the store but the cocaine would be exchanged at a different location by someone else. Id. ¶ 7.

Mainly on the basis of the foregoing allegations, on April 2 Sprague applied for and obtained a warrant from the Middlesex Superior Court authorizing the placement of a body wire on Brathwaite to record any conversations with petitioner or any associate between April 3 and April 5, 1993. Id. 19.

Prior to applying for the warrant, however, Sprague had sought to verify Brathwaite's claim that he had met and discussed the cocaine business with petitioner at M.C.I. Gardner during visits with Funez. To do this he was in contact with the Massachusetts Department of Corrections, which advised him in a facsimile transmission that there was no record of Luis Zuluaga ever visiting anyone at Gardner. 2d Supp. Answer, PT. Hrg., Tr. III, 24:12 - 27:12. Sprague did not include that information in his affidavit. Id. 42:3-7.

He did inquire of the Lowell Police Department if anyone there knew anything about petitioner's alleged involvement in the illegal drug business. An officer told him that the department

7

had suspected for several years, based on informant tips, that petitioner was a drug dealer.  In spite of their efforts, however, they were never able to confirm that allegation, and gave Sprague no concrete details on which their suspicions may have been based.  Sprague included their suspicion in the affidavit.  Supp. Answer, Tab 2, Supp. R.A., 28, ¶9.

**The April 3 Sting.**

Brathwaite duly presented himself at petitioner's Lowell workplace the next morning, April 3, equipped with the body wire which had both recording and transmitting capabilities.  To encapsulate: there were four separate meetings between the two men at or near the travel agency office that day, all observed by a number of law enforcement officers conducting surveillance at fixed points or in moving vehicles in the area, including a special van equipped with video and listening equipment parked directly across the street.  The interior of the office was clearly visible through a large plate glass window facing the street.  The co-defendant Restrepo was also present at some point during two of the meetings.  Petitioner was seen talking on the telephone and at one point accompanied Brathwaite to his nearby parked car.  Petitioner stood by as Brathwaite briefly opened and then closed the trunk.  2d Supp. Answ., Tr. IV, 85:8-11.  The two returned to the travel agency.  Restrepo was observed meeting twice with the other co-defendant, Osario, on a street a few

blocks from the agency.  A surveillance office testified at trial
that Restrepo seemed to put a small package inside his jacket
after their second encounter.  Brathwaite, petitioner and
Restrepo were then observed entering an outside door adjacent to
the travel agency and descending into a basement.  Moments later
Brathwaite emerged, gave a pre-arranged signal, and the police
rushed over and arrested petitioner.  In a basement storage room
they found a kilogram of cocaine in a desk drawer and a small bag
of cocaine on the floor near where Restrepo was arrested in the
hallway.  Osario was followed to his home in Dracut where he was
arrested.  A search warrant executed later that day turned up a
little over two kilograms of cocaine in his apartment.  Id. 63-
68, ¶¶ 8-20.

**The Motion to Suppress and "Franks-Type" Hearing.**

Prior to trial, petitioner filed a motion to suppress the
fruits of the body wire warrant.   Restrepo joined in the motion.
Osario moved to suppress the evidence found at his residence.

A judge of the Superior Court (Lauriat, J.) granted an
evidentiary hearing, although, as noted earlier, not strictly
speaking under the criteria of Franks v. Delaware, 438 U.S. 154
(1979).  Supp. Answ., Tab 2, Supp. R.A., 69.  Nevertheless,
Sprague, among others, testified at the hearing.  The focus of
the petitioner's attack was Sprague's failure to inform the
issuing magistrate of the negative result of his attempt to

9

verify Brathwaite's contention that he had met the petitioner
twice at MCI Gardner.  2d Supp. Answer, PT Hrg. Tr. III, 94:1-14.
Counsel suggested the omission was deliberate in order not to
dilute the affidavit, but Sprague countered that his oversight
was innocent and justifiable.  His years of experience in law
enforcement and some familiarity with visiting procedures at
correctional institutions caused him to conclude that it would
not be unusual for a particular visitor to go unrecorded through
staff carelessness or a confusion of names.  Id. 35:21 - 36:3.
Accordingly, he did not think it important to advise the
magistrate of the negative results of his search.  Id. 87:10
("There is no information in the affidavit about that non-event,
that's correct.").

The motion judge found the omission to be a misstatement of
fact, but not an intentional or reckless one.  Supp. Answer, Tab
10, R. 60.  He disavowed reliance on any of the alleged
misstatements, including the statement about the visits, in
finding probable cause for the body wire warrant.  Id. R. 66.
Instead, he focused on the four post-release telephone
conversations Brathwaite supposedly had with petitioner and what
Brathwaite said had transpired at his meeting with petitioner on
April 2.  Id. R. 66.  These, plus the meeting itself, were a more
than adequate basis of knowledge under applicable Massachusetts
(and federal) law.  The motion judge found Brathwaite's

information sufficiently reliable primarily because he was not an anonymous or even confidential informant and, indeed, had been willing to put his credibility on the line by wearing the wire and actively participating in the sting operation. Id. R. 67-68. In addition, the court found that the verification of petitioner's business telephone number and address as well as the familiarity and suspicion on the part of the local police regarding petitioner were corroborating factors in its determination. Id.

**The Trial.**

Two developments during the trial are relevant to this petition. First, Brathwaite, as he had done at the hearing on the motion to suppress, claimed his right under the Fifth Amendment and refused to testify. Id. 49, n. 2; 43 Mass.App.Ct. at 641 (Supp. Answ., Tab 4).

On October 2, 1994, however, the day before the scheduled trial date, he had given a statement to Osario's investigator that he (Brathwaite), in concert with the Lowell police, had set up the petitioner by planting the cocaine in the basement. Id. 641-642. Due to Brathwaite's unavailability at trial, petitioner sought to elicit his hearsay confession from the investigator as a witness. After a voir dire hearing, at which Sprague testified, the trial judge (Whitehead, J.) prohibited the testimony because he concluded that several factors made it

11

untrustworthy.  Id.  Important among them was that Sprague
testified that he had twice spoken to Brathwaite at the Nashua
Street jail in Boston on October 3, the day after the
investigator.  He said that Brathwaite agreed that, "he would
tell the truth" and that "there was nothing going on that I
[Sprague] did not know about."  Id. at 642; 2d Supp. Answ., Tr.
VIII, 192-194.

     Second, because Brathwaite refused to testify, the only
evidence of any allegedly incriminating statements made by the
petitioner was derived from the body wire.  Sargent William
Taylor of the Lowell Police testified that he had monitored the
four April 3 conversations between Brathwaite and the petitioner
in real time from inside the surveillance van.  He repeated them
in considerable detail to the jury.  In summary, he claimed that
he had heard the petitioner ask Brathwaite how much money he had
brought, id., Tr. V, 130:19, and if he had come alone, id. 131:4;
that he would have to talk to his people about possibly lowering
the price next time; that they were concerned because no one knew
Brathwaite, id. 134:11; and, that he should do the next deal
during the week, not the weekend.  Id. 141:9.  He also testified
that he heard petitioner tell Brathwaite during the third meeting
that "we can count the money now to get it over with."  Id.
141:22.  At the fourth and final meeting, he said he heard
petitioner tell Brathwaite to go get the money two or three

times.  Id. 150:6-13.

The tapes themselves were introduced into evidence, Exhibts 29 and 30, 2d Supp. Answ., Tr. VII, 137, and relevant excerpts played for the jury which purported to contain the same incriminating statements.  Id. 139:15.  All parties agreed that the audio portion of the tapes were very difficult to decipher. Id. Tr. V, 121:24 - 122:2; 126-127; Tr. X, 179:4-9.  The tapes, as evidence, were with the jury during their deliberations. The prosecutor suggested that careful, repeated listenings would confirm the statements that Sergeant Matthews had testified he heard petitioner make on April 3.  Id. 179-182.

**The Direct Appeal.**

On direct appeal, the petitioner challenged, *inter alia,* the finding of probable cause to support the warrant for the body wire and the court's refusal to take the investigator's testimony about Brathwaite's hearsay confession.  The Appeals Court, applying the Aguilar-Spinelli analysis still utilized in Massachusetts as the standard for reviewing informant-based search warrant affidavits, see Aguilar v. Texas,378 U.S. 108 (1964), Spinelli v. United States, 393 U.S. 410 (1969), Commonwealth v. Upton, 394 Mass. 363, 374 (1985), basically adopted the trial court's reasoning, finding it significant that Brathwaite was not a confidential source and that he was willing to participate in the controlled purchase of cocaine from the

13

petitioner.  43 Mass.App.Ct. at 634-636; Supp. Answ., Tab 4.  On
the proffered hearsay confession, the court stressed that there
was too much indication of lack of trustworthiness, highlighting
Sprague's sworn testimony that Brathwaite at the time of trial
had definitively recanted his exoneration of the petitioner.  Id.
at 645.  The Supreme Judicial Court denied petitioner's
application for further appellate review without comment.
Supp.Answ., Tab 8 (last page).

**The Second Motion for New Trial.**

Petitioner's second motion for a new trial, filed in 2004,
was based on his then recent discovery that Trooper Sprague had
given false testimony in a Norfolk County murder indictment in
1980.  Supp. Answ., Tab 10, R. 268-315.  Specifically, on May 7,
2004 the petitioner discovered an article from the Boston Herald
of July 16, 2002 which indicated that Trooper Sprague had
presented false and misleading testimony to a grand jury in 1980.
Supp. Answ., Tab 10, R. 93.  The case was Commonwealth v.
Frederick Weichel, Norfolk Crim. No. 76394.[1]  Sprague told the
grand jury, under oath, that four eyewitnesses had positively
identified the defendant as the man they had seen running from a

_____

[1]  All of the following facts are taken from the "Findings,
Rulings and Order on Defendant's Motion to Dismiss Indictment"
in Norfolk Crim. No. [1980]76394 (Mulkern, J.).  Supp. Answ. R.
94 - 103.  The anonymous state trooper discussed in this document
is identified by the grand jury transcript as Massachusetts State
Trooper John R. Sprague.  Id. R. 300.

parking lot late at night in Braintree where a man had just been
shot and murdered.  He stated that the four witnesses had
identified the defendant both from photo arrays and a "quasi-
line-up" procedure.  In fact, three of the witnesses had been
unable to identify the defendant's photo as the fleeing man whom
they had briefly glimpsed on the night of the murder.  They all
noted that his photograph was one of several that "looked like"
the man they had seen.  The fourth witness did identify the
defendant from both his photo and the quasi-line-up, which was
actually a drive-by identification of the defendant standing on a
street corner.  Sprague also falsely told the grand jury that the
four witnesses had collaborated in the making of a composite
photograph of the suspect which they all agreed was a fair and
accurate likeness of the shooter of [the victim]".  Id., R. 96-
97.  In actuality, only one of the four contributed to the
composite and the other three were not even aware of it.  Id., R.
97.  A justice of the Superior Court (Mulkern, J.) found that
Sprague's testimony to the grand jury was "misleading" and
"seriously in error in material matters".  Id., R. 100.  He also
concluded that the grand jury's role had been "...usurped by the
presentment of flagrantly false information on an issue critical
to the determination of probable cause."  Id., R. 103.

    In his motion for new trial, the petitioner argued that the
non-disclosure of this impeachment evidence was a violation of

the prosecution's obligation to produce exculpatory evidence as
held in <u>Brady</u> v. <u>Maryland</u>, 373 U.S. 83 (1963).  Memorandum in
Support of [Second] Motion for New Trial, (Mem. New Trial), Supp.
Answ., Tab 10, R. 285-286.  He specifically asserted that the new
impeachment evidence was material to Sprague's testimony at both
the pretrial motion to suppress hearing and the voir dire hearing
mid-way through the trial.  <u>Id</u>. R. 282 ((a) and (b)) and R. 283
((g)).  At the former, it would have significantly undermined
Sprague's already suspect assertions that his omission of the
fact that official records indicated petitioner had never visited
anyone at MCI Gardner was not in bad faith.  If available during
the voir dire, it would have likely prevented the inference that
Brathwaite had recanted, in his October 3 conversation with
Sprague, his previous day's confession to Osorio's investigator
that the petitioner had been set up.

He argued that he was prejudiced by the non-disclosure
because Sprague's averments in the search warrant affidavit were
critical to the holding of probable cause for the issuance of the
body wire warrant and the court's refusal to suppress the
evidence acquired thereby.  It would also have strengthened the
case for admission of Brathwaite's hearsay confession at trial.
Sprague's testimony had been a significant factor in the court's
conclusion that Brathwaite's confession was unreliable.  Thus, it
would have arguably been heard by the jury and had a reasonable

16

likelihood of affecting the outcome of the trial.

**The Trial Court's Ruling on the Second Motion for a New Trial.**

The trial judge (Whitehead, J.) denied the second motion for a new trial without granting an evidentiary hearing or oral argument.  Supp. Answ., Tab 10, R. 9-10.  He found that the information qualified as new evidence but that it would have been inadmissible on two grounds.  One, prior bad act evidence was not permitted to impeach a witness; and, two, even if it was, it was so remote in time from petitioner's prosecution that it would have carried no evidentiary weight.  The order is one paragraph long with no analysis of either state or federal law.  Id., 316. The petitioner duly appealed.

**The State Appellate Rulings.**

The petitioner's brief in the Massachusetts Appeals Court was essentially identical to his memorandum in support of the motion for new trial filed with the Superior Court.  Supp. Answ., Tab 9.  Thus, he argued Brady, materiality and prejudice, citing a number of relevant Supreme Court cases.  Id.  In an unpublished decision pursuant to its own administrative Rule 1:28 [2] the court stated:

> "The defendant's motion for a new trial based upon

---

[2]  Rule 1:28 allows for summary disposition of an appeal without oral argument based on a determination that either no substantial question of law is presented or that some clear error was committed which has injuriously affected the rights of an appellant.  Mass.App.Ct. R. 1:28.

> newly discovered evidence was denied by the judge who
> conducted the original trial.  He explained his
> reasoning in a notation which was entered on the
> docket.  A. 10, 316.  See also Commonwealth's brief at
> page 8.  We agree with the judge's analysis and affirm
> for the reason he set forth."

> 63 Mass.App.Ct. 1114, 826 N.E.2d
> 794 (Table)(2005); Supp. Answ., Tab
> 12.

All three record references indicated by the Appeals Court repeat verbatim the trial judge's order quoted above.  No further exegesis is given.  Petitioner filed an application for further appellate review in which he raised the same federal constitutional claims.  Supp. Answ., Tab 13.  It was denied by the Supreme Judicial Court of Massachusetts on July 5, 2005 without comment.  Id. (last page); 444 Mass. 1106, 830 N.E.2d 1088 (2005).

## Issues Raised by Present Petition

[Q. 1     Was the Failure to Disclose Trooper Sprague's Prior
          Flagrantly False Testimony to a Grand Jury in 1981 a
          violation of the rule of Brady v. United States, 373
          U.S. 83 (1963)?

Q. 2      Was the State Court's Refusal to Grant a New Trial
          Based on the Newly Discovered Evidence a Violation of
          Federal Constitutional Law?

Q. 3       If so, was the Petitioner Prejudiced thereby?

## Summary Conclusion

The powerful impeachment evidence withheld by the prosecution was critical to the case and thus a <u>Brady</u> violation occurred.  The state court's ruling directly conflicts with petitioner's due process right to fully present a defense and his Sixth Amendment right to conduct a full and fair cross-examination of the government's witnesses against him.

Trooper Sprague's prior bad conduct evincing a dramatic lack of honesty in the performance of his official police duties and as an officer of the court was admissible at the <u>Franks</u> hearing and would have been sufficient to cause suppression of all statements recorded pursuant to the body wire.

Similarly, that same evidence would have negated Sprague's mid-trial voir dire testimony regarding the trustworthiness of the informant's hearsay confession as a statement against interest, thus resulting in its admission at trial.  These two significant changes in the evidence presented to the jury would have created a reasonable probability that the result of the trial would have been different.

**Argument**

**Petitioner Exhausted His Remedies in the State Court.**

The petitioner exhausted his available state remedies under 18 U.S.C. §2254(b)(1) by adequately raising his federal constitutional claims (one and two of the original *pro se* petition) by filing an Application for Leave to Obtain Further Appellate Review (ALOFAR) with the Supreme Judicial Court of Massachusetts pursuant to Mass. R. App. P. 27.1(b). Supp. Answ., Tab 13, p. 6, ¶¶ I and II. In point I, petitioner frames the issue as whether a <u>Brady</u> violation of the suppression of critical impeachment evidence, "... is a violation of constitutional magnitude of the right to due process...". <u>Id</u>. In point II, he first articulates the same non-disclosure as, "...a violation of constitutional magnitude of the right to confrontation (cross-examination)...", and adds that the violation was compounded by the Appeals Court's "...absolute bar to the admissibility of same once post-conviction discovery of such evidence had been made?" <u>Id</u>. Alternatively, petitioner hones in on the summary treatment of his constitutional claim by the Appeals Court:

> "May evidence of prior false testimony on the part of the prosecution's central witness, such as that evidence here presented, be deemed impermissible as prior bad acts and remote in time so as to negate violations of constitutional dimension achieved through the prosecutions's having suppressed same, faced with not knowing what use defense counsel may have made of

> such evidence or what further may have been discovered
> had such evidence been properly disclosed as per
> specific request?"
>
> *Id*.

**Standard of Review of State Court Decision**

Neither of the two state appellate courts addressed in any

fashion the federal constitutional claims raised by the

petitioner.  The motion court curtly rejected the petitioner's

constitutional claims on the basis of state evidentiary law.

This was done in a summary fashion without any citation to case

precedent or governing rule or statute.  Specifically, it said

that:

> "Prior bad acts are not admissible to impeach a
> witness and, even if they were, these prior bad acts,
> assuming that they occurred, were so remote in
> time to defendant's prosecution that they would
> carry no evidentiary weight.  Stated simply, the
> newly discovered information could not possibly have
> affected the outcome of the case."
>
> Supp. Answer, Tab 10, R. 10, 316.

Therefore, review of those claims by this district court is

*de novo*.  Fortini v. Murphy, 257 F.3d 39, 47 (1st Cir. 2001);

DiBenedetto v. Hall, 272 F.3d 1, 7 (1st Cir. 2001).

**I.   Was the There a Brady Violation?**

"Brady requires the prosecution to provide a defendant

access to exculpatory evidence that is in the prosecutor's

control."  Ellsworth v. Warden, N.H.State Prison, 333 F.3d 1, 4

(1st Cir. 2003)(citations omitted).  If the non-disclosed

21

evidence raises a reasonable probability that the result of the
proceeding would have been different had it been produced, then
the conviction must be vacated.  Id.  A "reasonable probability"
is one which is sufficient to "undermine confidence in the
outcome".  United States v. Bagley, 473 U.S. 667, 682, 105 S.Ct.
3375 (1985).

    The initial questions on the Brady claim, then, are: was
Sprague's prior false testimony exculpatory and was it in the
control of the prosecution?  The answer is yes on both counts.
It was exculpatory because it was powerful impeachment evidence
of a critical prosecution witness.  See Strickler v. Greene,527
U.S. 263, 281-282 (1999); Conley v. United States,
415 F.3d 183, 188 (1st Cir. 2005).  Sprague's testimony was
critical to the Commonwealth because it was his affidavit which
procured the body wire.  Without the evidence resulting from the
body wire, the state's case would have been mere observations of
a mixture of mundane, every day activities (office meetings,
telephone calls, etc.) with mildly suspicious circumstances (four
meetings over a two hour period with Braithwaite, three meetings
with Restrepo) and the unexplained appearance of one kilogram of
cocaine in a basement storage area located below and adjacent,
but not belonging, to the petitioner's travel agency.

    Similarly, Sprague's testimony regarding his conversation
with Braithwaite on the eve of trial was a significant factor in

the court's refusal to permit Osorio's investigator to tell the jury about Braithwaite's confession.  True, it was not the only indication of untrustworthiness, but the Appeals Court found it to be an effective demonstration that Braithwaite had recanted his previous day's confession.  A nearly contemporaneous recantation of the very statement against penal interest which a proponent seeks to introduce can scarcely be called non-critical.  Therefore, at two fundamentally important junctures in the proceedings against petitioner Sprague was a critical witness against him.

But was evidence of Sprague's 1980 dereliction known to the prosecution at the time of petitioner's trial?  In its response to petitioner's [second] motion for new trial, the government asserted that it did not know of that evidence. [**cite**] Such a denial is not dispositive.  "The government's duty to disclose extends beyond material in the prosecution's possession."  Moreno Morales v. United States, 334 F.3d 140, 146 (1st Cir. 2003).  "A prosecutor "has a duty to learn of any favorable evidence known to the others acting on the government's behalf in the case, including the police.""  Id. (quoting from Kyles v. Whitley, 514 U.S. 419, 437 (1995).  Thus, the prosecutor in petitioner's case was under an obligation to inquire of his prospective witnesses regarding any important impeachment information which could be used against them.  See United States v. Osorio, 929 F.2d 753,

761 (1st Cir. 1991)(prosecutor whose witness has an impeachable past has a duty to search for and produce requested impeachment evidence). Sprague was uniquely important to the motion to suppress and his credibility in that regard was paramount to the motion court's review of his affidavit.  Doubtless the prosecutor was aware of that upon learning that the court intended to hold an evidentiary hearing.  It does not matter that the evidence of Sprague's prior bad acts in front of the 1980 grand jury were arguably not admissible under the Massachusetts law of evidence. Since the consequences are of constitutional magnitude, the prosecution must err on the side of caution and produce the material.

II.      The Denial of Petitioner's Second Motion for New
         Trial on Separate State Law Grounds of
         Inadmissibility and Staleness Was Nonetheless
         Incorrect under Federal Constitutional Law.

It is well settled that a claim of error decided on an independent and adequate state law grounds is not cognizable by a federal habeas court. Simpson v. Montesanz, 175 F.3d 200, 205-206 (1st Cir. 1999).  That is true, however, only if the application of state law in a particular instance does not itself violate federal constitutional law.  That is precisely what has happened in this case.  Both the Appeals Court and the Supreme Judicial Court decisions are unequivocal endorsements of

24

the decision and reasoning of the trial court judge who initially ruled on the motion.  They neither add nor detract in any way from it.

Thus, the state law on which the motion was denied was a rule of evidence derived from the common law.  Generally, that rule in Massachusetts is that extrinsic evidence of prior instances of dishonesty or untruthfulness may not be admitted to impeach a witness. See e.g. Commonwealth v. Bohannon, 376 Mass. 90, 93 (1978).  The related federal counterpart of this concept is contained in Rule 608(b) of the Federal Rules of Evidence.  It does permit inquiry into such instances on cross-examination but does not allow extrinsic proof.  Inquiry is allowed if, in the discretion of the court, the subject would be probative of truthfulness or untruthfulness.  The examiner must take the answer as it comes.

It is a violation of constitutional due process to prohibit the admission of prior bad act evidence which is of weighty importance to the defendant's defense.  Cf. Chambers v. Mississippi, 410 U.S. 284 (1973) (Exclusion of evidence on critical issue which might have had significant impact on jury verdict is a denial of the right to present a defense). Evidence of Sprague's lying to a grand jury was not just of weighty import to petitioner's case, it was critical.

Witness bias was another grounds on which the new evidence

25

should have been allowed under federal constitutional principles.
Bias is never a collateral matter and so may be shown by
extrinsic evidence as well as on cross-examination.  <u>United
States</u> v. <u>Abel</u>, 469 U.S. 45, 52 (1984).  The bias present here
was Sprague's apparent overriding institutional loyalty.

**Prejudice: the <u>Franks</u> Hearing**

The evidence of Sprague's egregious misconduct in front of
the grand jury in 1980 was very relevant to petitioner's case in
1994.  It was Sprague's recital of Brathwaite's alleged
conversations with petitioner in the few weeks before April 3rd
and especially what he claimed transpired between Brathwaite and
petitioner at the unrecorded meeting at the travel agency on
April 2d which furnished the lion's share of what the motion
court considered probable cause for the body wire.  Indeed, the
court expressly ignored Sprague's claims about what Braithwaite
had allegedly told him of the [non-existent] visits by petitioner
to MCI Gardner before Braithwaite's release.  Although the court
did not find Sprague's failure to mention the utter lack of
records of such visits to be intentional, it did find them to be
misleading.  In reviewing an affidavit under the <u>Franks</u>
principles, intentional or reckless misstatements or omissions
are to be excised and probable cause must be based on what
remains.  In this case, what remained was more unreliable
attestations by a police officer who had once cynically,

26

mendaciously and blatantly manipulated a grand jury in order to obtain a murder indictment at all costs.  Had these facts been available to defense counsel on cross-examination it is likely the court would have found Sprague's omission to be intentional. Striking that single allegation would have ostensibly been immaterial, as the court did not at any rate consider it in its probable cause analysis.  But a motion court in the Franks context is also entitled to weigh the credibility of the affiant himself.  His credibility bears on whether statements he attributes to others should in turn be believed.

Sprague's prior flagrantly false testimony to the grand jury raises not just the question of his veracity but also his bias. In 1980 he was gaming the process in order to assure a criminal indictment.  To say that his fabrications in Weichell were just well-intentioned but misapplied zeal would be euphemistic.  He told whoppers under oath because that was what was necessary to achieve his prosecutorial goal: a murder one indictment.  In the instant case, the same inference would be quite reasonable. Thus, his protestation that lack of confirmation from the visiting records was a 'non-event' and so he did not mention it in his affidavit could be seen as just another attempt to hide important facts from the fact finder.  This pattern of bias could have negated a finding of probable cause.  In 1980 Sprague lied about multiple eyewitness identifications; in this case, he

deliberately withheld information which contradicted the other allegations in his affidavit.  Though the motion judge gave him the benefit of the doubt at the time, with the use of this new evidence it is just as likely that the court would have discounted everything that Sprague claimed Brathwaite had told him.  What remained, the bare fact that Brathwaite sat down in petitioner's travel agency, as any customer coming in off the street could do, on April 2, that he was willing to testify and that the Lowell Police had completely uncorroborated suspicions about petitioner would not have been sufficient for a finding of probable cause.

The body wire supplied a wealth of incriminating admissions regarding the petitioner's apparent participation in a drug trafficking conspiracy.  Without those admissions the Commonwealth's case would have depended exclusively on the testimony of the various police surveillance witnesses and the seizure of cocaine from a basement storage area not in any way identified with the petitioner.  Most of the petitioner's behavior which was observed by those witnesses was innocuous in itself: meeting with clients in his storefront office, talking on the telephone, having coffee with a client in a neighboring café. A few instances were perhaps curious by themselves: that Brathwaite went to the travel office four times in approximately two hours, staying for only a few moments each time, and the

28

stroll the two of them took to Brathwaite's car where he opened
and shut its trunk as petitioner stood by.  But without the
context supplied by the conspiratorial conversations with
Braithwaite, any conviction would be based on mere speculation.
Brathwaite himself, of course, refused to testify at trial.
Without the introduction of the recorded statements, his absence
could only have worked more in the petitioner's favor.  The jury
would wait for him to supply the missing context and when he
declined to do so its likely conclusion would be that the
criminal connection did not exist between them.  Sergeant Taylor
would have been of scant help.  Without the transmission of the
conversations via the body wire he could not have heard a single
word from his location inside the unmarked van.  In sum, for all
intents and purposes the recordings were the Commonwealth's case.
Without them it is very doubtful the case would have survived a
motion for a directed verdict.  Without the warrant, there would
have been no recordings.

**Prejudice: the Voir Dire on Brathwaite's Confession.**

Massachusetts has adopted Federal Rule of Evidence
804(b)(3).  <u>Commowealth</u> v. <u>Carr</u>, 373 Mass. 617, 623 (1977).  In
determining whether a statement against penal interest in
sufficiently trustworthy to be admitted as an exception to the
hearsay rule, the credibility of the declarant is of great
importance.  One of the main reasons the state appeals court

found Brathwaite not believable was because Sprague testified under oath that he had recanted his confession the day after he supposedly made it to Osorio's investigator.  But if Sprague's credibility and prosecutorial bias had been impeached by his 1980 grand jury performance, it is unlikely that the trial or appellate courts would have found Brathwaite to be untrustworthy. Some of the other indicia of trustworthiness under Rule 804(b)(3) had already been met.  His statement was made in the presence of third-parties, some of whom were lawyers, and there was little motive for him to misrepresent; it could only subject him to criminal liability for conspiring to set up the petitioner.  A third-party confession, while not always persuasive, can have a significant effect on the fact-finder's verdict.  It is not necessary here to conclude that it would have but only that there was a reasonable probability that it could have.  That criterion is met by this fact pattern.  Accordingly, the withholding of the newly discovered evidence prejudiced the petitioner.

### Conclusion

For the reasons stated above, the petitioner respectfully requests that this Honorable Court vacate his state court conviction because the prosecution failed to disclose exculpatory evidence to him which prejudiced him at his trial, and for such further relief as it deems meet and just.

By his attorney,


S/Raymond E. Gillespie
Raymond E. Gillespie
BBO #192300
875 Massachusetts Avenue Suite 32
Cambridge, MA 02139
(617) 661-3222




**Certificate of Service**

I, Raymond E. Gillespie, attorney for the petitioner, Luis Zuluaga, hereby certify that a copy of the foregoing Supplemental Memorandum in Support of Pro Se Petition for a Writ of Habeas Corpus Pursuant to 28 U.S.C. 2254 was served electronically on all parties listed to receive such service in this case on July 1, 2007:


S/Raymond E. Gillespie
Raymond E. Gillespie



supp_memo