## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

————————————————  )
                                        )
**LUIS ZULUAGA**                        )
  **Petitioner,**             )
                                        )     **Civil Action No. 05-11856-NG**
**v.**                                  )
                                        )
**LUIS SPENCER**                        )
  **Respondent.**             )
————————————————  )

## MEMORANDUM OF THE RESPONDENT
## <u>IN OPPOSITION TO THE PETITION FOR WRIT OF HABEAS CORPUS</u>

     The respondent submits this memorandum in opposition to the petition for writ of habeas corpus filed by Luis Zuluaga ("the petitioner") who was convicted in 1994 for drug trafficking.  He alleges that the prosecution failed to disclose impeachment evidence regarding a State Police Officer who testified at his state suppression hearing and trial and that such non-disclosure violated his due process rights under the Fourteenth Amendment of the United States Constitution.  *Brady v. Maryland*, 373 U.S. 83 (1963).[1]  He also asserts that the state court's ruling that the impeachment evidence was inadmissible under state

---

    [1]  The impeachment evidence consisted of a 1981 Norfolk Superior Court order pertaining to an unrelated case which characterized the state trooper's grand jury testimony as "misleading."(Supp. Ans. Exh. 10 at R.100).  The indictment was dismissed in that case, *id.*,  but Weichell was reindicted a few months later based on  testimony from the same state trooper before a second grand jury. (Supp. Ans. Exh. 10 at 93).  Weichell was eventually convicted of first degree murder.  *Commonwealth v. Weichell*, 390 Mass. 62, 453 N.E. 2d 1038 (1983).

2

evidence law violated his Sixth Amendment right to confront and cross-examine witnesses

in his defense. (Petitioner's Supplemental Memorandum (hereinafter Pet. Supp. Mem.) at

19). [2]

It is the respondent's position that the state court adjudication of the issue was not

contrary to nor an unreasonable application of *Brady* and subsequent Supreme Court

cases. Although Zuluaga seeks de novo review of the claims under *Fortini v. Murphy*, 257

F. 3d 39, 27 (1st Cir. 2001), such review is unwarranted. The petitioner presented the *Brady*

claim to the Appeals Court which decided the issue on prejudice grounds as guided by

Supreme Court law and its determination is subject to deferential review . *See Early v.*

*Packer*, 123 S.Ct. 3, 8 (2002). In any event, whether this Court's review is de novo or

deferential, Zuluaga's *Brady* claim is insupportable on the facts of this case and prevailing

law. As the Appeals Court ruled, the impeachment evidence was inadmissible under long

settled Massachusetts evidence law and, even if the evidence had been disclosed, there is no

---

[2] **Zuluaga's third claim was dismissed by this Court. (Electronic Order, Civil Docket for Case # 05-11850 at February 10, 2006). In Ground Three, the petitioner alleged that his due process rights were violated by the trial court's denial of his attempt to introduce the informant's confession under the hearsay exception to Fed. R. Evid. 804 (b)(3) for declarations against penal interests. (Petition, p. 6, ¶ 12C). The claim was dismissed pursuant to the respondent's motion to dismiss because Zuluaga filed his habeas petition five years after the expiration of 28 U.S.C. § 2244(d)'s statute of limitation and he had failed to show any "extraordinary circumstances" to justify its tolling."(Electronic Order, Civil Docket for Case # 05-11850 at February 10, 2006). (The respondent continues to maintain that the entire petition is time-barred.)**
**In any event, despite the dismissal, the petitioner has again raised Ground Three but with a new twist, i.e., the informant's confession would have been admitted by the trial judge at the 1993 trial under Fed. R. Evid. 804 (b)(3) had the impeachment evidence been available to impeach state trooper's credibility. (Pet. Supp. Mem. at 30). This claim surfaced for the first time ever in this context in the Petitioner's recently filed Supplemental Memo and is unexhausted as well as legally insupportable. *See infra.*.**

3

reasonable probability that the result of the proceeding would have been different. *United States v. Bagley*, 473 U.S. 667, 682 (1985). The evidence of drug trafficking against the petitioner was overwhelming and no reasonable fact finder could have concluded that the stale impeachment evidence would make any difference in the verdict whatsoever.

## PRIOR PROCEEDINGS

On April 22, 1993, a Middlesex County grand jury indicted the petitioner for trafficking in 200 or more grams of cocaine and conspiracy to traffic in cocaine. On October 19, 1994, after a jury trial before Massachusetts Superior Court Associate Justice Howard J. Whitehead, the petitioner was found guilty on two indictments and sentenced to 18-20 years in prison. Thereafter he filed a timely appeal of his conviction to the Massachusetts Appeals Court ("Appeals Court") which affirmed the conviction on October 10, 1997. *Commonwealth v. Zuluaga,* 430 Mass.App.Ct. 629, 686 N.E.2d 463 (1997)(Supp. Ans. Exh. 4). The Supreme Judicial Court ("SJC") denied the petitioner's application for leave to obtain further appellate review on November 20, 1997. *Commonwealth v. Zuluaga*, 436 Mass. 1102, 766 N.E. 2d 70 (Table)(2002)(Supp. Ans. Exh. 5).

On June 26, 2000, the petitioner filed a post-appeal motion for a new trial and a motion for an evidentiary hearing. These motions were denied by Justice Whitehead on October 3, 2000. The petitioner filed a timely appeal of the denial of the motions and on January 3, 2002, the Appeals Court affirmed the Superior Court's decisions. *Commonwealth v. Zuluaga*, 53 Mass.App.Ct. 1110, 760 N.E.2d 814 (2002)(Supp. Ans. Exh. 7). The SJC denied the petitioner's application for leave to obtain further appellate review on February 27, 2002. *Commonwealth v. Zuluaga,* 436 Mass. 1102, 766 N.E.2d 70

4

(2002)(Supp. Ans. 8).  On October 21, 2002, the United States Supreme Court denied the

petitioner's petition for a writ of certiorari.  *Zuluaga v. Massachusetts*, 537 U.S. 982 (2002).

The petitioner filed his second motion for a new trial, along with a motion to vacate

the conviction and for entry of an order of acquittal, on June 9, 2004.  On July 2, 2004, the

motion judge, who was also the trial judge, denied the motion.  The petitioner filed a timely

appeal to the Appeals Court, which affirmed the denial of his motions for a new trial and to

vacate the conviction on May 9, 2005.  *Commonwealth v. Zuluaga*, 63 Mass. App. Ct. 1114,

826 N.E. 2d 794 (Table)(2005)(Supp. Ans. Exh. 12).  His application for further appellate

review was denied by the SJC on July 5, 2005.  *Commonwealth v. Zuluaga*, 444 Mass. 1106,

830 N.E. 2d 1088 (Table)(2005)(Supp. Ans. Exh. 13).  On October 11, 2005, the United

States Supreme Court denied the petitioner's petition for a writ of certiorari.  *Zuluaga v.

Massachusetts*, 537 U.S. 982 (2002).

On September 14, 2005, the petitioner filed the instant petition for a writ of habeas

corpus pursuant to 28 U.S.C. § 2254.  The respondent moved to dismiss the action as time-

barred pursuant to 28 U.S.C. § 2244(d).  On February 10, 2006 the court granted the

motion in part and denied the motion in part.  (Electronic Order on 02/10/2006, Civil

Docket for 05-11856).  The court dismissed count three of the Petition and retained counts

one and two. (Id.)  The petitioner filed a Supplemental Memorandum of Law in Support of

Pro Se Petition For Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254 (Supp. Mem.) on

July 1, 2007.  (Id.) A hearing on the petition is currently scheduled for November 5, 2007.

5

**STATEMENT OF FACTS** [3]

The Appeals Court summarized the presumptively correct facts of the petitioner's

drug trafficking charge, *see* **28 U.S.C. § 2254(e)(1), as found by the motion judge after**

lengthy hearings, as follows. *Commonwealth v. Zuluaga*, **43 Mass. App. Ct. 629, 631-634,**

**686 N.E. 2d 463, 467-468 (1997).**

On March 30, 1993, Kevin Brathwaite informed Trooper John R. Sprague of the Massachusetts State Police that, while serving a sentence at M.C.I, Gardner, he learned that "Luis," the owner of a travel agency in Lowell, was a substantial cocaine distributor. Brathwaite believed he could effect a large drug purchase from Luis. Following Sprague's instructions, Brathwaite arranged to purchase a kilogram of cocaine for $28,000 from Luis Zuluaga (FN2) [4] on April 3, 1993 between 10 A.M. and noon.

Sprague sought and obtained a search warrant to "intercept, monitor and record the conversations" between Brathwaite and Zuluaga and his "presently unidentified associates." At some time between March 30 and April 3, Sprague agreed to pay Brathwaite $1,000, if the investigation proved successful and led to arrests and the seizure of cocaine. (FN3) [5] On the morning of April 3, Brathwaite was outfitted with a hidden device which allowed the police to receive and record his communications. Officers were situated in motor vehicles and on foot for surveillance of the travel agency and its surrounding areas. The police also set up a video camera in a van across the street from the agency.

Brathwaite arrived at the agency about 11:40 A.M. Zuluaga told him to return in an hour, saying his man had the cocaine at his house and would arrive shortly. Thereafter, Restrepo arrived at the agency, spoke briefly with Zuluaga, walked to his car, and, followed surreptitiously by police, drove to the J & P

---

[3] See also for a Statement of Facts the Brief and Supplemental Record Appendix For the Commonwealth in the petitioner's direct appeal. (Supp. Ans. Exh. 2 at 4-12).

[4] **(FN2.) Police investigation had ascertained that Zuluaga was the owner of the travel agency.**

[5] **(FN3.) Sprague paid Brathwaite $500 on the day of Zuluaga's arrest and $500 a day or two later.**

6

Appliance store at 369 Bridge Street in Lowell where he met Osario.  The latter left the store, entered a grey pickup truck and drove off in the direction of Dracut. Restrepo drove back to where his car had previously been parked.

Brathwaite returned to the agency at 1 P.M. and again at 1:30 P.M. but was told by Zuluaga on each occasion that the drugs had not yet arrived.  He so informed Sprague.  Shortly after 1:30 P.M., Restrepo returned to the agency, met briefly with Zuluaga, and walked to a street where he was picked up by Osario's grey truck.  After traveling a short distance, Restrepo disembarked and stepped into a doorway, opened his jacket and placed a light-colored package underneath it.  He then walked back to the area of the travel agency where he met Zuluaga on the sidewalk, and the two men entered a doorway between the agency and a "Subway Shop."  A few minutes later, Zuluaga returned to the agency, and Restrepo walked away.

Brathwaite once again came back to the travel agency, met Zuluaga and Restrepo, who had returned, and, after Brathwaite took cash from an unmarked police vehicle, the three men entered the doorway between the travel agency and the "Subway Shop."  A few minutes later, Brathwaite and Zuluaga came out of the doorway, whereupon Brathwaite gave a signal with his cap indicating that the cocaine had arrived.

The police moved in and arrested Zuluaga.  Simultaneously, other officers entered the doorway, descended, and arrested Restrepo at the foot of the stairway. They observed a small storage room to the left of Restrepo, with its door partially opened.  After Restrepo's arrest, Brathwaite came down the steps and told the officers that Restrepo and Zuluaga had gone into the storage room.  After a brief search of that room, the officers found a package containing approximately one kilogram of white powder in a desk drawer.  Upon analysis it was determined to be cocaine, as was the contents of a small package found beside Restrepo when he was arrested. (FN4)[6]

After the arrest of Zuluaga and Restrepo, officers went to the J & P Appliance store to arrest Osario, the operator of the grey pickup truck.  Seeing the truck drive by, Trooper Thomas Greeley followed it to Dracut, where it stopped at 83 Montaup Avenue.  Osario attempted to enter the front door but was arrested.

---

[6] (FN4.) There was also evidence at the motion hearing that after Restrepo's arrest, the police searched his apartment with his wife's consent. There, they found about $6,500. The motion judge noted that Restrepo had waived any argument that that search was invalid.

7

Officers secured the house and waited while Greeley applied for and obtained a search warrant.  During their wait for the warrant, officers saw a man knock at the front door.  Upon questioning, he told the police he was carrying $3,500 which he owed to Osario.

After his arrest and prior to the search of his residence, Osario was given his Miranda rights and agreed to answer questions put to him by two Lowell police officers.  He told them that he lived at 83 Montaup Avenue in Dracut, that he had lived there by himself for three years, and that he had gone home after talking to Restrepo at the J & P Appliance store.

On executing the warrant at Osario's residence, the police found approximately 2,300 grams of cocaine, a scale, 5.3 grams of marihuana, (FN5)[7] $18,300 in cash, records, and drug-related paraphernalia.

*Id.*

## STANDARD OF REVIEW

Because the petitioner filed his petition for habeas corpus after the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 (the "AEDPA"), review of the petitioner's claim is governed by that statute.  *Lindh v. Murphy*, 521 U.S. 320, 336 (1997); *see Niland v. Hall*, 280 F.3d 6, 11 (1st Cir. 2002); *Bui v. DiPaolo*, 170 F.3d 232, 235 (1st Cir. 1999) (AEDPA applies to petitions filed after April 24, 1996), *cert. denied*, 529 U.S. 1086 (2000).  AEDPA "places a new constraint on the power of a federal habeas court to grant a state prisoner's application for a writ of habeas corpus with respect to claims adjudicated on the merits in state court."  *Williams v. Taylor*, 529 U.S. 362, 412 (2000); *see Bell v. Cone*, 535 U.S. 685, 693 (2002) (the AEDPA "modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that

---

[7] **(FN5.) At trial, the judge excluded the marihuana from evidence as the indictments did not mention marihuana.**

8

state-court convictions are given effect to the extent possible under the law"); *Williams v. Matesanz,* 230 F.3d 421, 426 (1st Cir. 2000) ("a federal [habeas] court operates within a closely circumscribed sphere").

In relevant part, the AEDPA precludes a federal court from granting habeas relief, unless the state court's adjudication of a claim "on the merits" "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. §2254(d)(1), or was based on "an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. §2254(d)(2); *see Kibbe v. DuBois,* 269 F.3d 26, 33 (1st Cir. 2001), *cert. denied sub nom., Kibbe v. Maloney*, 535 U.S. 960 (2002); *Hurtado v. Tucker*, 245 F.3d 7, 15-16 (1st Cir.), *cert. denied,* 534 U.S. 925 (2001). The phrase "clearly established Federal law, as determined by the Supreme Court of the United States" refers to the holdings, as opposed to the dicta, of the Supreme Court's decisions as of the time of the relevant state-court decision. The statutory language makes clear that § 2254(d)(1) restricts the source of clearly established law to Supreme Court jurisprudence. *Williams v. Taylor*, 529 U.S. at 412. Writing for a majority in *Williams* relative to the proper construction of §2254(d)(1), Justice O'Connor's opinion gave independent meaning to both the "contrary to" and the "unreasonable application" clauses of the statute, and rejected the *de novo* analysis espoused by four members of the Court. *Williams v. Taylor*, 529 U.S. at 404.

The Supreme Court has instructed that a state-court decision is "contrary to" clearly established Supreme Court precedent "if the state court applies a rule that contradicts the

9

governing law set forth in" Supreme Court cases or "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [Supreme Court] precedent." *Williams v. Taylor*, 529 U.S. at 405-406; *see Mountjoy v. Warden, New Hampshire State Prison,* 245 F.3d 31, 35 (1st Cir. 2001), *cert. denied*, 535 U.S. 969 (2002); *Hurtado v. Tucker*, 245 F.3d at 15.

A state court decision constitutes an "unreasonable application" of Supreme Court precedent "if the state court identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts of the particular state prisoner's case." *Williams v. Taylor*, 529 U.S. at 407-408; *see Lockyer v. Andrade*, 123 S. Ct. 1166, 1174-76 (2003). In making this determination, a federal habeas court "should ask whether the state court's application of clearly established federal law was objectively unreasonable." *Williams v. Taylor*, 529 U.S. at 411; *see Kibbe v. DuBois*, 269 F.3d at 36; *Hurtado v. Tucker*, 245 F.3d at 15-16; *Williams v. Matesanz,* 230 F.3d at 426-427. There is no bright line rule as to what constitutes an "objectively unreasonable" application of federal law. *Williams v. Taylor*, 529 U.S. at 410 ("[t]he term 'unreasonable' is no doubt difficult to define"). However, as the *Williams* decision makes clear, an unreasonable state-court determination is not the equivalent of an incorrect one. *Id.* ("the most important point is that an unreasonable application of federal law is different from an incorrect application of federal law") (emphasis in original). Thus, it is settled that "a federal habeas court may not issue the writ simply because the court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application [or determination] must also be

10

unreasonable." *Id.* at 411; *see Mountjoy v. Warden, New Hampshire State Prison,* 245 F.3d at 35. This Court has noted that the question of unreasonableness involves "'some increment of incorrectness beyond error'....The increment need not necessarily be great, but it must be great enough to make the decision unreasonable in the independent and objective judgment of the federal court." *McCambridge v. Hall,* 303 F.3d 24, 36 (1st Cir. 2002) (en banc), quoting *Francis S. v. Stone,* 221 F.3d 100, 111 (2d Cir. 2000). "If it is a close question whether the state decision is in error, then the state decision cannot be an unreasonable application." *Id.*

The same standard of unreasonableness applies under 28 U.S.C. § 2254(d)(2) which precludes habeas corpus relief unless there was an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. *Torres v. Prunty,* 223 F.3d 1103, 1107-08 (9th Cir.2000). Thus, a habeas court may not second guess a state court's fact finding process unless, after review of the state court record, it determines that the state court decision was not merely wrong but objectively unreasonable. *See Taylor v. Maddox,* 366 F. 3d 992, 999 (9th Cir. 2003). In addition, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence. *Norton v. Spencer,* 351 F.3d 1, 6 (1st Cir. 2003), *cert denied,* 124 S. Ct. 2876 (2004)(quoting 28 U.S.C. § 2254 (e)(1)). "'The presumption of correctness is equally applicable when a state appellate court, as opposed to a state trial court, makes the finding of fact.'" *Id.,* (quoting *Sumner v. Mata,* 455 U.S. 591, 593 (1982)). With respect to 28 U.S.C. § 2254(d)(2) and 28 U.S.C. § 2254(e)(1), the Third Circuit has noted that both, "express the same

**11**

fundamental principle of deference to state court [factual] findings." *Lambert v. Blackwell*,

387 F.3d 210, 235 (3d Cir.2004).

## ARGUMENT

I.    **THE STATE COURT ADJUDICATION IS ENTITLED TO DEFERENCE ON FEDERAL HABEAS CORPUS REVIEW.**

Under the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L.

No. 104-132, § 104, 110 Stat. 1214, 1218-19, this Court's standard of review of the state

adjudication depends on whether the state court "adjudicated on the merits" Zuluaga's

*Brady* claim. 28 U.S.C. § 2254(d).  *Healy v. Spencer*, 453 F. 3d 21, 25 (2006).   If it did, this

could must determine whether the state court's conclusion was "contrary to, or involved an

unreasonable application of, clearly established Federal law, as determined by the Supreme

Court of the United States. *McCambridge v. Hall*, 303 F.3d 24, 34 (1st Cir.2002) (en banc);

28 U.S.C. § 2254(d)(1).   If the state court did not reach and adjudicate the merits, then de

novo review is warranted.

In *Commonwealth v. Zuluaga*, 63 Mass. App. Ct. 1114, 826 N.E. 2d 794 (2005)(Supp.

Ans. Exh. 12), the Appeals Court rejected the petitioner's claim that the "prior bad act" of

the state trooper that occurred twelve years before Zuluaga's suppression hearing and trial

violated *Brady*'s mandate.   The court upheld the decision of the motion judge, who was

also the trial judge, who had rejected the *Brady* claim on prejudice grounds.  (Supp. Ans.

Exh. 11 at 8).  The Appeals Court stated that it agreed with the judge's analysis and

affirmed the decision for the reason the judge set forth in his decision.  (Supp. Ans. Exh.

12).  The motion judge had ruled that:

12

   The court will take as true that, because the basis of the motion is newly discovered information and because discovery by the [petitioner] on his own would have been most unlikely absent the fortuity of the referenced newspaper article, [petitioner] has not waived this motion by failing to raise the issue on his direct appeal or by way of his previous motion for a new trial.  Nevertheless, the court denies the motion for this reason: The newly discovered information never would have been admissible at any stage of the [petitioner's] case.  Prior bad acts are not admissible to impeach a witness and, even if they were, these prior bad acts, assuming that they occurred, were so remote in time to [petitioner's] prosecution, that they would carry no evidentiary weight.  Stated simply, the newly discovered information could not possibly have affected the outcome of this case.

*Id.*

   Zuluaga asserts that his claim should be reviewed de novo because the decisions of the Appeals Court and the Supreme Judicial Court did not cite case precedent when rejecting his *Brady* claim.  (Pet. Supp. Mem. at 21).  However, such citation is unnecessary in order to merit deferential review.  The Supreme Court in *Early v. Packer* 537 U.S. 3, 8 (2002) held that deference is accorded the state court adjudication even if no federal law or controlling Supreme Court precedents were cited. *Knight v. Spencer,* 447 F.3d 6, 12 (1st Cir.2006); *Petrillo v. O'Neill* 428 F.3d 41, 45 (1st Cir. 2005); *Ellsworth v. Warden*, 333 F. 3d 1, 4 n.1 (1st Cir. 2003).  Citation to Supreme Court precedents is not required nor is awareness of Supreme Court law "so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early v. Packer,* 537 U.S. at 8.  Moreover, *Early* suggests that the state court need only address federal claims in terms of analogous state law principles in order for AEDPA to apply. *See Norton v. Spencer,* 253 F. Supp.2d 65, 72-73 (D. Mass. 2003).

   Here, the petitioner as well as the Commonwealth recognized in their briefs to the state appellate courts, see Supp. Ans. Exh. 9, 11, 13, that the *Brady* issue was the legal

13

centerpiece of the inquiry and its prejudice prong the decisive factor in accepting or rejecting the claim. Zuluaga hammered the issue both in his brief to the Appeals Court and ALOFAR to the Supreme Judicial Court, citing *Brady* and its analogous Massachusetts counterpart, *Commonwealth v. Tucceri,* 412 Mass. 40, 589 N. E. 2d 1216 (1992)(stating that SJC's prejudice prong is more favorable to defendants than the Federal Constitutional standard). *See Healy v. Spencer*, 453 F. 3d at 25-26 (where the state court uses a state standard that is more favorable than the federal standard then the court will consider the *Brady* claim "adjudicated on the merits"). *See Norton v. Spencer*, 351 F. 3d 1, 5 (1st Cir. 2000)(where state case law is more protective of defendant's rights the federal law adjudication is subsumed within the state law adjudication). The petitioner devoted 33 out of 35 pages of his Appeals Court brief to a discussion of *Brad*y and its state and federal progeny. ( Exh. 9 at 1-33).

The state courts reached the claim by focusing on the prejudice prong of *Brady* and *Tucceri* and deference should be accorded to its decision. The motion judge's conclusion that the impeachment information if admitted could not possibly have affected the outcome of the case closely tracks the Supreme Court and First Circuit's definition of the prejudice under *Brady.* "Withheld evidence warrants undoing a conviction only when 'there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.'" *Ellsworth v. Warden*, 333 F.3d 1, 4 (1st Cir. 2003), quoting *United States v. Bagley* 473 U.S. 667, 682 (1985). A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Id.* This is the *Brady* prejudice or materiality standard and, without it, there is no *Brady* violation.

14

*McCambridge v. Hall*, 303 F. 23d 24, 37 (2002), citing *Strickler v. Greene*, 537 U.S. 263, 281 (1999)("there is never a real *Brady* violation unless the nondisclosure was so serious that there is a reasonable probability that the suppressed evidence would have produced a different verdict.")  While the respondent continues to maintain that the Appeals Court settled the federal constitutional question on prejudice grounds and deference should be accorded its decision, the petition must fail under either standard of review.

II.    **AS THE MASSACHUSETTS APPEALS COURT HELD THERE WAS NO VIOLATION OF THE PETITIONER'S DUE PROCESS RIGHTS UNDER *BRADY V. MARYLAND.***

To find constitutional error based on the government's alleged failure to turn over evidence, a defendant must demonstrate that (1) the government both possessed and suppressed the evidence; (2) the evidence was favorable to the defendant because it was "exculpatory, or ... impeaching;" and (3) the defendant was prejudiced by the suppression. *Strickler v. Greene*, 527 U.S. 263, 281-82 (1999).  *See also Brady v. Maryland*, 373 U.S. 83, 87 (1963).

Applying the *Brady* criteria, the impeachment information was not exculpatory in the traditional sense since it did not tend to negate the guilt of the accused or establish his innocence.  The fact that a state police officer misrepresented identification information before a grand jury 12 years before the petitioner's trial in an totally unrelated matter hardly negates the considerable evidence before the jury of his drug dealing and requires this Court to ignore the testimony and evidence of many other individuals.  While impeaching evidence may be  exculpatory,  *see United States v. Bagley,* 473 U.S. at  676, the calibre of impeaching evidence that establishes a defendant's  innocence and impacts the

15

outcome of a trial usually relates to evidence attacking eyewitness testimony or a challenge to a co-defendant's version of events. In the case at bar the impeachment information merely gave defense counsel some ammunition on cross-examination to attack the police officer whose testimony was by and large corroborated by events and numerous other police officers who were involved in the investigation. There was no restriction on the scope of cross-examination of the witness at any time. Defense counsel was free to cross-examine the witness on any relevant subject and was not prevented from doing so.

In addition, the government neither possessed nor suppressed the evidence. Two entirely different District Attorney's Offices were involved in the 1981 and 1993 proceedings and scores of prosecutors and police officers handling thousands of cases had passed through the two offices in the 12 years that elapsed between the two cases. There was no evidence whatsoever that the Middlesex County Assistant District Attorney who prosecuted Zuluaga in 1993 knew of the 1981 Norfolk Superior Court order or that the information was within his care, custody or control. Moreover the 1981 Norfolk Superior Court was a public document accessible to all including the petitioner's trial attorney who, with some diligence, might have discovered it. In any event it was accessible to all parties.

Even if the evidence could be deemed "exculpatory" and within the government's control, the Commonwealth's failure to assist the defense by disclosing information that might have been helpful in conducting the cross-examination will cause a reversal of a conviction only if the evidence is material in the sense that its suppression undermines confidence in the outcome of the trial. *United States v. Bagley*, 473 U.S. at 678. *See infra*. The petitioner has utterly failed to establish that the evidence was material and that he met

16

the *Brady* criteria of prejudice.

To satisfy the "prejudice" prong the defendant must establish a reasonable probability that the trial would have ended differently if the evidence had been disclosed. *Pennsylvania v. Ritchie*, 480 U.S. 39, 57 (1987). Put another way, "the question is whether 'the favorable evidence could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict.'" *Strickler*, 527 U.S. at 290, quoting *Kyles v. Whitley*, 514 U.S. 419, 435 (1995). *See also United States v. Agurs*, 427 U.S. 97, 109-10 (1976) ("The mere possibility that an item of undisclosed information might have helped the defense, or might have affected the outcome of the trial, does not establish "prejudice" in a constitutional sense"). In assessing prejudice "[t]he question is not whether the defendant would more likely than not have received a different verdict with the evidence, but whether in its absence he received a fair trial, understood as a trial resulting in a verdict worthy of confidence." *Kyles v. Whitley*, 514 U.S. 419, 434 (1995). "[A] constitutional error occurs, and the conviction must be reversed, only if the evidence is material in the sense that its suppression undermines confidence in the outcome of the trial." *United States v. Bagley*, 473 U.S. at 678.

As the Appeals Court noted, the evidence was inadmissible under state evidentiary principles. Under Massachusetts practice, a witness may not be impeached either on cross-examination or by extrinsic proof by use of specific acts of misconduct showing the witness to be untruthful unless the act resulted in a conviction. Handbook of Massachusetts Evidence, 8th Edition, § 6.16.3. A witness' credibility may not be impeached by showing that he testified falsely in a collateral proceedings. *Commonwealth v. Frey*, 390 Mass. 245,

17

249 , 454 N.E. 2d 478, 480 (1983)(witness's deposition testimony in civil case is inadmissible to show lack of credibility in criminal case). *Accord Commonwealth v. Bregoli*, 431 Mass. 265, 275, 727 N.E. 2d 68, 69 (2000); *Commonwealth v. LaVelle*, 414 Mass. 146, 151, 605 N.E.2d 852 (1993).

Suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment . *Brady*, 373 U.S. at 87, 83. But, evidence is only material if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. *United States v. Bagley* 473 U.S. at 682. Inadmissible evidence is by definition not material. *United States v. Ranney,* 719 F.2d 1183, 1190 (1st Cir.1983). In *Ellsworth*, 333 F.3d at 5, the First Circuit carved an exception to the rule, holding that evidence itself inadmissible could be so promising a lead to strong exculpatory evidence that there could be no justification for withholding it. However, this exception to the rule against inadmissible evidence is not pertinent here. The impeachment evidence concerned a police officer's testimony in a totally unrelated murder in another county that occurred many years before the Zuluaga's drug trafficking prosecution and could not possibly lead to any exculpatory evidence pertaining to the petitioner. The petitioner has never claimed otherwise.

The Appeals Court reasonably determined that the 1981 Norfolk Superior Court Order failed meet *Brady*'s prejudice standard because the inadmissibility of the report supported the motion judge's conclusion that the Order was not material. *See Wood v. Bartholomew*, 516 U.S. 1, 5-6 (1995) (noting that inadmissible polygraph test was not

18

"evidence" and therefore was not material); *Breedlove v. Moore*, 279 F.3d 952, 964 (11th

Cir. 2002) (upholding Florida Supreme Court's denial of *Brady* claim based on

inadmissibility of allegedly suppressed evidence and noting that ""i]nadmissible evidence

could only rarely meet [*Brady* 's materiality] standard.  Indeed no Supreme Court case ...

has found inadmissible evidence was material for *Brady* purposes"" ); *Delap v. Dugger*, 890

F. 2d 285 (11th Cir. 1989)( unrelated illegal activity by a police officer testifying for the

state would likely not have been admissible under Florida's law of evidence, and thus

immaterial for *Brady* purposes).

The petitioner erroneously asserts that the evidence of Trooper Sprague's prior bad

act was admissible at the suppression hearing, Pet. Supp. Mem. at 19, despite the Appeals

Court's opposite conclusion that such impeachment was prohibited under state evidentiary

law. Handbook of Massachusetts Evidence (8th Ed.) § 6.16.3,  Prior Bad Acts.[8]

It is well-established that the state supreme court is the final arbiter of state law including

construing and applying state rules of evidence absent a federal constitutional overlay.  A

federal habeas court does not sit to correct even a misapplication of state law, unless such

misapplication violates the Constitution, laws, or treaties of the United States.  *Estelle v.*

*McGuire*, 502 U.S. 62, 67-68 (1991).  *See  Lewis v. Jeffers*, 497 U.S. 764, 780 (1990).("[I]t is

---

[8] A witness's credibility may be attacked by testimony of another witness that he has a poor reputation for truthfulness and veracity among those who know him.  This method of impeachment is limited to (1) general reputation for truth and veracity, not character in general or (2) evidence of general reputation, not specific acts of lying or misconduct. Handbook of Massachusetts Evidence (8th Ed.) § 6.16.1.   Only evidence of a witness' current reputation is admissible.  *Commonwealth v. Moore,* 379 Mass. 106, 115, 393 N.E. 2d 904, 910 (1979)(seven year old evidence too attenuated); *Commonwealth v. Phachanisiri*, 38 Mass. App. Ct. 100, 109, 645 N.E. 2d 904, 910 (1995)(evidence of defendant's reputation for truthfulness five years earlier properly excluded).

19

not the province of a federal habeas court to reexamine state-court determinations on state-law questions.").   Not "every error of state law can be transmogrified by artful argumentation into a constitutional violation." *Sanna v. Dipaolo*, 265 F.3d 1, 12 (1st Cir. 2001).

The petitioner may not approve of the Massachusetts Appeals Court's application of state evidentiary law in his case but the Due Process Clause does not permit the federal courts "to engage in a finely-tuned review of the wisdom of state evidentiary rules: 'It has never been thought that [decisions under the Due Process Clause] establish [the Supreme Court] as a rule-making organ for the promulgation of state rules of criminal procedure.'" *Marshall v. Lonberger,* 459 U.S. 422, 438 n. 6 (1983), quoting *Spencer v. State of Texas*, 385 U.S. 554, 564 (1967).   In the face of the "legitimate state purpose and the long-standing and widespread use," a state rule of law "does not run foul of the Fourteenth Amendment because another method may seem to our thinking to be fairer or wiser or to give a surer promise of protection to the prisoner at bar." *Spencer v. State of Texas*, 385 U.S. at 564, quoting *Snyder v. Commonwealth of Massachusetts,* 291 U.S. 97, 105 (1934).

Moreover, the Supreme Court has stated that the Due Process Clause does not guarantee the right to introduce all relevant evidence.  "The accused does not have an unfettered right to offer [evidence] that is incompetent, privileged or otherwise inadmissible under standard rules of evidence. *Montana v. Egelhoff*,  518 U.S. 37, 42(1996) quoting *Taylor v. Illinois*, 484 U.S. 400, 410 (1988).  While the right to introduce evidence is not absolute, the Due Process Clause does place limits upon restriction of that right.  A defendant asserting such a limit must sustain the usual heavy burden that a due process

20

claim entails.  A state decision is not subject to proscription under the Due Process Clause unless "it offends some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental." *Montana v. Egelhoff*, 518 U.S. at 43, quoting *Patterson v. New York*, 432 U.S. 197, 201-202 (1977).  The petitioner cannot meet the heavy burden of establishing that Massachusetts rule that prohibits impeachment of a witness by use of specific acts of misconduct violates a "fundamental principle of justice." *Montana v. Egelhoff*, 518 U.S. at 43-44.  The historical record supports the long standing Massachusetts rule.

> [E]vidence of particular acts showing [the witness] to be untruthful were inadmissible.
>> The reasons generally given are: That proof of separate instances of falsehood may have existed without impairing [a witness's] general reputation for truthfulness. Or that the impeached witness is not required to be prepared to meet particular acts of which he has had no notice, although he is presumed to be capable of supporting his general reputation. Or that the attention of jurors will be distracted from the real issue to be tried by the introduction of collateral issues, which also would tend to prolong the trial unduly.

*F.W. Stock & Sons v. Dellapenna*, 217 Mass. 503, 506, 105 N. E. 378, 379 (1914). Zuluaga has failed to meet his heavy burden of proving that the state Appeals Court application of a long standing rule of evidence in the petitioner's case violated a fundamental principle of justice.

Zuluaga maintains that the impeachment evidence would have negated the state trooper's testimony in total at the suppression hearing and inevitably would have caused the trial judge to suppress his inculpatory statements recorded pursuant to the body wire. (Pet. Supp. Mem. at 19).  As the petitioner concedes, the body wire contained a "wealth of

21

incriminating admissions regarding the petitioner's apparent participation in a drug

trafficking conspiracy." (Pet. Supp. Mem. at 28).  The petitioner does not point to

particular falsities in the Trooper Sprague's affidavit but attacks without foundation or

any specifics the state trooper's recounting of his conversations with Brathwaite regarding

the drug buy. (Pet. Supp. Mem. at 26).   The petitioner ignores the fact that Sprague was

not the only source of the information  regarding the Brathwaite connection to Zuluaga's

drug trafficking.  State Police Trooper Thomas Greeley testified at the suppression hearing

that he became involved in a joint investigation with the Lowell Police Department and met

with Kevin Brathwaite along with Trooper Sprague in March, 1993. (Pre-Trial Motion

Hearing Vol. IV/101).   Brathwaite told Greeley and Sprague that he could buy cocaine

from Zuluaga; that he had spoken with Zuluaga on a few occasions; that he knew Zuluaga

operated a travel agency in the Lowell area; that he could purchase approximately two

kilos of cocaine from Zuluaga.  (Id. at 101-102).   Greeley said that a meeting was set up

between Brathwaite and Zuluaga for April 2, 1993, and police surveillance of the meeting

was arranged. (Id.at 102).  Greeley was one of many surveillance officers who observed the

first meeting between Brathwaite and Zuluaga. (Id at 103).  After that meeting Brathwaite

met with Trooper Sprague and Sgt. Waterman of the Lowell Police Department. (Id. at

104-105). [9]

    As the motion judge found, the majority of the information given to the state

---

[9] The petitioner mischaracterizes the suppression hearing as a *Franks* hearing.  As
the motion judge stated, a hearing was not constitutionally mandated under *Franks v.
Delaware,* 438 U.S. 154, 155-156 (1976), and he ordered the hearing in his discretionary
authority because there was a factual misstatement in the affidavit.

22

trooper by Brathwaite was corroborated. The phone number which Brathwaite stated

Zuluaga could be reached -(508) 937-5555) - was listed to the Difference Travel Agency on

Merrimack Street in Lowell. The Lowell Police Department corroborated that Zuluaga

owned the travel agency, and was suspected of trafficking in cocaine. Lowell Police Officer

Fernandez, who knew Zuluaga personally, called the travel agency and confirmed that it

was in fact Zuluaga who answered the business' telephone. Fernandez had lived near

Zuluaga in Lowell for several years, had met and spoken with him by telephone on several

occasions, and was familiar with his voice. Even if reviewed de novo, a state court's

factual determinations are still entitled to a presumption of correctness under 28 U.S.C. §

2254(e)(1). *See Di Benedetto v. Hall*, 272 F. 3d 1,7 n.1 (whether or not state court

adjudicated claim on the merits deference to factual findings still applies.) The

impeachment evidence does not disturb the trial court's finding that the search warrant for

the body wire was legally proper. [10]

## II.    THE CLAIM THAT THE INFORMANT'S CONFESSION WOULD HAVE BEEN
ADMISSIBLE BUT FOR THE LACK OF IMPEACHMENT EVIDENCE

---

[10] **Ordinarily a state court's decision to deny a defendant's motion to suppress evidence under the Fourth Amendment of the United States Constitution is not open for review by a federal habeas court. The United States Supreme Court has made clear that "where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus belief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial." *Stone v. Powell*, 428 U.S. 465, 481-96 (1976); accord *Sanna v. DiPaolo*, 265 F.3d 1, 8-10 (2001) ("*Stone* thus stands for the proposition that a federal habeas court ordinarily cannot revisit a state court's disposition of a prisoner's Fourth Amendment claims."). There were several days of hearing on the motion to suppress and the petitioner had a full and fair opportunity to assert his Fourth Amendment rights. Issues not solely related to the *Brady* claim are foreclosed on habeas review under *Stone*.**

23

**AGAINST THE STATE TROOPER HAS NEVER BEEN EXHAUSTED.**

It is well established that "a federal court should not consider questions posed in a habeas petition until the 'power of the highest state court in respect to such questions' has been exhausted." *Mele v. Fitchburg District Court*, 850 F.2d 817, 819 (1st Cir. 1988), *quoting United States ex rel. Kennedy v. Tyler*, 269 U. S. 13, 17 (1925). *See Rose v. Lundy*, 455 U. S. 509, 518-519 (1982). 28 U.S.C. § 2254(b)(1)(A). The exhaustion principle, in addition to ensuring that state courts have the first opportunity to correct their own constitutional errors made in their proceedings, enables federal courts to accord appropriate respect to the sovereignty of the states and promotes comity by "minimiz[ing] friction between our federal and state systems of justice." *Rose v. Lundy*, 455 U. S. at 518. See Scarpa v. DuBois, 38 F.3d 1, 6 (1st Cir. 1994), *cert. denied*, 513 U. S. 1129 (1995); *Mele v. Fitchburg District Court*, 850 F.2d at 819. *See also Ex parte Royall*, 117 U. S. 241, 251 (1886) (state and federal courts are "equally bound to guard and protect rights secured by the Constitution"). The petitioner must first present the substance of each of his federal habeas claims to the state's highest tribunal before seeking federal habeas review. *O'Sullivan v. Boerckel*, 526 U.S. 838, 847 (1999)*; Gagne v. Fair,* 835 F.2d 6, 7 (1st Cir. 1987)*; Mele*, 850 F.2d at 819. Both the predicate facts and the federal legal theories must be fairly presented to the state's highest court. *Gagne,* 835 F.2d at 7; *Mele*, 850 F.2d at 819-20.

Moreover, every claim must have been exhausted. *Rose*, 455 U.S. at 522; *O'Sullivan,* 526 U.S. at 848. If a petition is "mixed" – that is, contains both exhausted and unexhausted

24

claims – it must be dismissed.[11]   *Rose*, 455 U.S. at 522; *Martens v. Shannon*, 836 F.2d 715, 717-18 (1st Cir. 1988).  Finally, a habeas petitioner "bears a heavy burden to show that he fairly and recognizably presented to the state courts the factual and legal bases of [his] federal claim." *Adelson v. DiPaola*, 131 F.3d 259, 262(1st Cir. 1997)

In the case at bar, the petitioner alleges implausibly that, had the impeachment evidence been available to use against the state trooper, the trial judge would have admitted into evidence the hearsay testimony of Brathwaite that he had planted the drugs in the desk drawer at the behest of the Lowell Police Department. (Pet. Mem. at 29-30). However as the SJC made clear, the trial judge's decision not to allow the informant's alleged confession into evidence was not based on the testimony of the Trooper Sprague.

The Appeals Court summarized the underlying facts relevant to this claim as follows:

> Both the Commonwealth and the defense sought to call Kevin Brathwaite as a witness at trial.  Citing his privilege under the Fifth Amendment to the United States Constitution, he refused to testify.  At a voir dire, the prosecutor explained he wanted to inquire into Brathwaite's involvement with Zuluaga and his discussions with Trooper Sprague from the end of March through April 3, 1993.  Defense counsel wanted to elicit from Brathwaite a description of events prior to March 30, 1993.  He expected Brathwaite to testify that, instigated by certain members of the Lowell police department, Brathwaite had framed Zuluaga and had planted the

---

[11]  Prior to enactment of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), failure to exhaust all claims in state court required dismissal of the entire petition.  Under AEDPA, a court confronted with unexhausted claims may, in its discretion, either dismiss the entire petition as unexhausted or deny (but not grant) the petition on the merits.  *See* 28 U.S.C. § 2254(b)(1)-(2) ("[a]n application for a writ of habeas corpus may be *denied* on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State") (emphasis added).  Thus, the Court may deny the entire petition, but may not dismiss the unexhausted claims and then grant the petition on the basis of the petitioner 's remaining claims.  *Id.; O'Sullivan*, 526 U.S. at 842-48 (affirming dismissal of petition containing unexhausted claims).

25

cocaine in the desk drawer.  Brathwaite had previously related this account to counsel for Zuluaga, counsel for Osario, and an investigator hired by Osario.

At the conclusion of the voir dire, the trial judge upheld Brathwaite's Fifth Amendment claim and declared the witness unavailable.  The defendants wanted to introduce in evidence Brathwaite's hearsay statement to the investigator under the authority of *Commonwealth v. Carr*, 373 Mass. 617, 623, 369 N.E.2d 970 (1977), and *Commonwealth v. Drew*, 397 Mass. 65, 73, 489 N.E.2d 1233 (1986).

*Commonwealth v. Zuluaga,* 43 Mass. App. Ct. at  641.   The judge excluded the investigator's testimony.  *Id.*  at 642.   In *Carr*, the SJC essentially adopted Fed. R. Evid. 803 (b)(3) in which a statement against penal interest may be admitted into evidence as an exception to the hearsay rule under certain conditions.  *Commonwealth v. Carr*, 373 Mass. at 623.   As the Appeals Court stated, [1] the declarant's testimony must be unavailable;  [2] the statement must so far tend to subject the declarant to criminal liability 'that a reasonable man in his position would not have made the statement unless he believed it to be true';  and [3] the statement, if offered to exculpate the accused, must be corroborated by circumstances clearly indicating its trustworthiness.'  *Commonwealth v. Zuluaga,* 43 Mass. App. Ct. at  643  quoting *United States v. Thomas*, 571 F.2d 285, 288 (5th Cir.1978).  However, a statement tending to expose the declarant to criminal liability and offered to exculpate the accused is not admissible unless corroborating circumstances clearly indicate the trustworthiness of the statement.  *Commonwealth v. Carr*, 373 Mass. at 623.  See Proposed Mass.R.Evid. 804(b)(3) and Handbook of Massachusetts Evidence (8th Ed.) § 8.21.

At the outset the question arises as to whether this claim was fairly presented to the state appellate courts as required by the exhaustion rule.   It is clear from the record that

26

this precise claim was never presented to the state appellate courts in this context on federal constitutional grounds.   The petitioner did raise in his direct appeal in 1996 that the trial judge erred in refusing to permit testimony by a witness to whom the Commonwealth's informant admitted having planted the evidence against Zuluaga. (Supp. Ans. Exh. 1 at 48).   *See Commonwealth v. Zuluaga*, 43 Mass. App. Ct. at 641-646.  However the claim was propounded by the petitioner to the Appeals Court purely as judicial error under state evidentiary law with no federal constitutional overlay.   (Supp. Ans. Exh. 4). Some years later,  when the petitioner was pursuing the appeal relevant to the instant petition, he failed to include in his ALOFAR any mention of his claim that his failure to learn of the impeachment evidence caused the trial judge to exclude Brathwaite's confession.  (Supp. Ans. Exh. 13at 6-7).  Fair presentation of an issue to the state courts "requires that the constitutional analysis necessary to resolve the ultimate question posed in the habeas petition and in the state court proceedings, respectively, be substantially the same." *Scarpa*, 38 F.3d at 6; *Martens*, 836 F.3d at 717 ("[T]he legal theory in the state and federal courts must be the same." (quoting *Gagne v. Fair*, 835 F.2d 6, 7 (1st Cir. 1987)).  In light of all of the foregoing, "a habeas petitioner bears a heavy burden" to show that his claims were "fairly and recognizably presented to the state courts." *Adelson*, 131 F.3d at 262.   The record demonstrates that the claim was never fairly presented to the SJC in the ALOFAR and is thus unexhausted. *Josselyn v. Dennehy*, 475 F. 3d 1,3 (1st Cir. 1007); *Mele v. Fitchburg District Court*, 850 F.2d 817, 819 (1st Cir. 1988);

Putting aside the exhaustion issue, the claim that the impeachment evidence would have caused the trial judge to admit Brathwaite's confession is profoundly erroneous.  This

absurd conclusion totally ignores the facts found by the trial judge in his decision not to admit the informant's alleged confession that he planted the drugs at the instigation of unnamed officers of the Lowell Police Department.    The trial judge found the informant's confession untrustworthy for reasons that had little to do with the state trooper.

The Appeals Court stated that the trial judge carefully reviewed Brathwaite's statements to the investigator which left him "unconvinced that they were trustworthy." *Commonwealth v. Zuluaga*, 43 Mass. App. Ct. at 644.

> [The trial judge] discounted the testimony of Zuluaga and of his friend as not being from disinterested persons. He noted that Brathwaite sat on the information for a long period of time during which, according to his account, innocent defendants were in jail awaiting trial. Not until he was advised that he would be a witness did he give the new version, and then he gave it to representatives of the persons whom he had caused to be incarcerated. At the time of his new statements, Brathwaite was in jail. As an incarcerated inmate, he could feel vulnerable to retaliation from people who were similarly situated, not necessarily the defendants, but others who were in prison with him. Moreover, Braithwaite's character and his actions in court militated against the reliability of his statements. The judge noted that Brathwaite had been convicted of a crime, that on one day he had told the court that he was not going to exercise his Fifth Amendment rights and then, two days later, changed his mind. If his out-of-court statement was true, he acknowledged being part of a previous lie resulting in the incarceration of innocent individuals. Although Brathwaite on his own came to the defendants' representatives, he, in effect, recanted his statements when Trooper Sprague visited him the next day. Most significant, in the judge's opinion, was the fact that Brathwaite had a motive to fabricate. He had expected the government would pay him $1,000 and send him on his way. Instead he was still incarcerated. Knowing the position of a so-called "rat" in a penal institution, he had every motive not to testify for the government and to testify in favor of the defendants to exonerate himself in the eyes of his fellow inmates.

*Id.*

In sum the substance of the claim that the impeachment evidence if known would have caused the trial judge to admit Brathwaite's confession was never fairly presented to the state's highest courts and is unexhausted. It is also totally unsupportable on the facts

28

and law of this case.

## CONCLUSION

For the above-stated reasons the petition for writ of habeas corpus should be denied.

Respectfully submitted,

MARTHA COAKLEY
ATTORNEY GENERAL
/s/ Annette C. Benedetto
Assistant Attorney General
Criminal Bureau
One Ashburton Place
Boston, Massachusetts 02108
(617) 727-2200
BBO No. 037060

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the Electronic Case Filing system will be sent electronically to the registered participant as identified on the Notice of Electronic Filing and paper copies will be sent to those indicated as non-registered participants on the date set forth below.

Dated: September 28, 2007                    /s/ Annette C. Benedetto
                                             Assistant Attorney General