**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

_____
LUIS ZULUAGA,                          )
    Petitioner,                  )
                             )
    v.                             )    **Civil Action No. 05CV11856-NG**
                             )
LUIS SPENCER,                          )
    Respondent.                  )
_____)
GERTNER, D.J.:

**MEMORANDUM AND ORDER RE: PETITION FOR HABEAS CORPUS**
January 31, 2008

I.    **INTRODUCTION**

Luis Zuluaga ("Zuluaga") brings this habeas petition pursuant to 28 U.S.C. § 2254 challenging his 1994 cocaine trafficking conviction in Massachusetts state court for which he received a sentence of 18 to 20 years. Zuluaga makes two claims for relief, both based upon the same factual predicate: after his conviction, it was revealed to Zuluaga through a newspaper article that one of the witnesses against him, Massachusetts State Trooper John R. Sprague ("Sprague"), had given "flagrantly false" grand jury testimony fourteen years earlier in 1980 in an unrelated first degree murder case, which resulted in the extraordinary dismissal of an indictment for egregious abuse of the grand jury process. Zuluaga claims that the state prosecutor's failure to disclose the facts of Sprague's 1980 testimony resulted in a violation of 1) his due process rights

under <u>Brady v. Maryland</u>, 373 U.S. 83 (1963), and 2) his Sixth

Amendment right to confront the witnesses against him.[1]

For the reasons that follow, **Zuluaga's § 2254 petition**

**(document # 1) is DENIED.**

## II.    <u>BACKGROUND</u>

Zuluaga and two co-defendants, Arlon Osario ("Osario") and

Hugo Restrepo ("Restrepo"), were indicted in Middlesex Superior

Court on April 3, 1993, on two separate counts of trafficking in

excess of 200 grams of cocaine in Lowell and Dracut,

Massachusetts, and one count of conspiracy to traffic in cocaine.

Zuluaga was subsequently convicted and sentenced to 18-20 years

in prison.

### A.    <u>Zuluaga's Arrest</u>

According to an affidavit by Massachusetts State Trooper

John R. Sprague, on March 30, 1993, a man named Kevin Brathwaite

("Brathwaite") contacted Sprague and indicated that he had

information about a cocaine supplier in Lowell. (Supp. Answ.,

Tab 2, R.A. 25-29 (document # 20).)  The two men met later that

day, at which time Brathwaite told Sprague that he had become

familiar with a man named Yasser Funez while incarcerated at

M.C.I. Gardner. (<u>Id.</u>)  Brathwaite claimed 1) that Funez was

Zuluaga's brother; 2) that he had actually met Zuluaga during one

---

[1] Zuluaga has all but abandoned this second claim in his briefs. The Court will briefly address the claim separately at the conclusion of this Order.

of Zuluaga's visits to see Funez; and 3) that he had learned that Zuluaga sold cocaine out of a travel agency in Lowell. (<u>Id.</u>) He further claimed that after his (Brathwaite's) release from M.C.I. Gardner, Zuluaga had suggested that they work together and had offered to sell him two kilograms of cocaine for $24,000 each. (<u>Id.</u>) At Sprague's suggestion, Brathwaite later met with Zuluaga and arranged a drug sale for the following day. (<u>Id.</u>) According to Sprague's affidavit, Sprague and another police officer observed Brathwaite enter Zuluaga's travel agency. (<u>Id.</u>) Armed with this information, Sprague sought and obtained a warrant for a body wire. (<u>Id.</u> at R.A. 19.)

Prior to applying for the warrant, Sprague called the Massachusetts Department of Corrections in order to verify Brathwaite's story but the Department of Corrections had no record of Zuluaga ever visiting anyone at M.C.I. Gardner. (2d Supp. Answ., P.T. Hrg., Tr. III, 24 (document # 25).) Sprague, however, did not include this information in his affidavit. (<u>Id.</u> at 42.) He did include information provided by several other police officers that Zuluaga had been suspected of being a major trafficker of cocaine for some time. (Supp. Answ., Tab 2, R.A. 28.)

On April 3, 1993, Brathwaite was outfitted with a body wire.[2]  Multiple police officers were stationed in an unmarked van or on foot in the vicinity of the travel agency.  Over the course of the day, police observed 1) Brathwaite enter Zuluaga's travel agency four separate times; 2) Restrepo drive to meet Osario; and 3) Restrepo place a light-colored package underneath a doorway.  Eventually, officers observed Brathwaite, Zuluaga, and Restrepo enter a door immediately adjacent to the travel agency.  When Brathwaite emerged from the door, he indicated that the cocaine had arrived at the location.  Police officers converged on the travel agency, arresting Zuluaga.  Numerous police officers entered the doorway adjacent to the travel agency and arrested Restrepo.  A search of a storage room revealed approximately one kilogram of cocaine.  A subsequent search of Osario's residence in Dracut revealed additional cocaine and other incriminating evidence.

### B.    The "*Franks*-Type" Hearing

Before trial, Zuluaga moved to suppress conversations intercepted pursuant to the body wire warrant. (Supp. Answ., Tab 2, R.A. 45-49.)  Zuluaga asserted that the government lacked probable cause to issue the warrant and that there were knowing and intentional misrepresentations in the supporting affidavit by

---

[2] Unless otherwise noted, the facts pertaining to the sting operation are taken from the recitation of facts in the Massachusetts Appeals Court's decision in Zuluaga's direct appeal.  <u>Commonwealth v. Zuluaga</u>, 43 Mass. App. Ct. 629 (1997) (Supp. Answ., Tab 4).

Sprague.  (Id.)  The alleged misrepresentations related to
whether Funez was actually Zuluaga's brother and whether Zuluaga
had ever visited Funez in prison and/or met Brathwaite.  (Id.)
Zuluaga also alleged that Sprague had paid Brathwaite $1,000 for
his cooperation.  (Id. at R.A. 51.)

Though the judge found that Zuluaga had failed to make a
substantial preliminary showing that any of Sprague's statements
in support of the warrant were intentionally and knowingly false,
the court nevertheless conducted a "Franks-type" evidentiary
hearing, (id. at R.A. 69).  See Franks v. Delaware, 438 U.S. 154
(1978).  Sprague's testimony at the evidentiary hearing as to his
encounters with Brathwaite were corroborated by the testimony of
another State Police Officer, Thomas Greeley.  (2d Supp. Answ.,
P.T. Hrg., Tr. IV, 101-102.)

The judge hearing the motion found that Sprague's omission
in his affidavit of his failed attempt to confirm Brathwaite's
claims constituted a misstatement of fact, but not an intentional
or reckless one.  (Supp. Answ., Tab 10, R. 60.)  The judge went
on to find that there were sufficient indicia of reliability to
credit Brathwaite, concluding that probable cause did exist based
on Brathwaite's statements to Sprague in conjunction with
Sprague's direct observations and independent confirmation of
other information provided by Brathwaite.  (Id. at R. 67-68.)
The Massachusetts Appeals Court later affirmed the ruling,

writing, "In sum, there were sufficient safeguards against fabrication to support the judge's conclusion that the veracity prong [of the so-called <u>Aquilar</u>-<u>Spinelli</u> test] had been satisfied and there was probable cause to issue the warrant." <u>Commonwealth v. Zuluaga</u>, 43 Mass. App. Ct. 629, 636 (1997) (Supp. Answ., Tab 4).

### C.   **Brathwaite's Confession**

Brathwaite exercised his Fifth Amendment privilege and did not testify either at the "<u>Franks</u>-type" hearing or at trial. On October 2, 1994, the day before Zuluaga's trial was scheduled to begin, Brathwaite spoke to an investigator working for one of Zuluaga's co-defendants and told him that he (Brathwaite) had, in concert with the Lowell police, set up Zuluaga by planting the cocaine in the basement of the travel agency.[3] According to this account, unidentified Lowell police officers stopped Brathwaite while he was driving, searched his car, and found cocaine and a notebook with Zuluaga's phone number in his possession. Brathwaite claimed that the police officers told him that he would not be prosecuted if he helped them set up Zuluaga. He further claimed that he eventually planted drugs, given to him by unidentified officers, in the desk drawer where police subsequently found them on the day of Zuluaga's arrest.

---

[3] Unless otherwise noted, the facts pertaining to Brathwaite's confession are taken from the recitation of facts in the Massachusetts Appeals Court's decision in Zuluaga's direct appeal. <u>Commonwealth v. Zuluaga</u>, 43 Mass. App. Ct. 629 (1997) (Supp. Answ., Tab 4).

Brathwaite also related this account to Zuluaga and co-defendants' counsel.

At Zuluaga's trial, the judge declared Brathwaite unavailable for trial based on his assertion of his Fifth Amendment rights and held a voir dire hearing on whether to admit Brathwaite's hearsay statement to the investigator pursuant to Commonwealth v. Carr. 373 Mass. 617, 623 (1977) (admission of statement against interest). Two witnesses testified at the hearing: the investigator to whom Brathwaite had made his "confession" and Sprague. The investigator repeated Brathwaite's statement as described above. Sprague, however, testified that he had met with Brathwaite on October 3, 1994, and that Brathwaite had not mentioned anything about the possible framing of Zuluaga. The judge ultimately excluded the statement, finding that there was insufficient corroboration to indicate that Brathwaite's statement to the investigator was trustworthy.

D. **The Body Wire Evidence at Trial**

At trial, Sergeant William Taylor of the Lowell Police testified that he had monitored the conversations overheard on the body wire on April 3, 1993, from a surveillance van parked near the travel agency. Taylor testified to hearing Zuluaga make numerous incriminating statements, including: asking Brathwaite about how much money he had with him and if he had come alone; indicating that he would think about lowering the price the next

-7-

time; expressing concern that he did not know Brathwaite better;
saying, "we can count the money now to get it over with"; and
telling Brathwaite to get the money.  (2d Supp. Answ., Tr. V,
130-50.)  After a two-and-a-half-week jury trial, Zuluaga was
ultimately convicted and sentenced to 18-20 years.

    **E.**   **Zuluaga Challenges His Conviction**

Zuluaga's conviction was affirmed on direct appeal,
see Commonwealth v. Zuluaga, 430 Mass. App. Ct. 629 (1997) (Supp.
Answ., Tab 4), and the SJC denied Zuluaga's application for
further appeal, see Commonwealth v. Zuluaga, 436 Mass. 1102
(Table) (2002) (Supp. Answ., Tab 5).  Zuluaga was similarly
unsuccessful in pursuing his first motion for a new trial.[4]  See
Commonwealth v. Zuluaga, 436 Mass. 1102 (Table) (2002); Zuluaga
v. Massachusetts, 537 U.S. 982 (2002) (denying cert).

Zuluaga filed a second motion for a new trial on June 9,
2004, this time basing his claims on newly discovered evidence.
Those claims are the basis for the present habeas petition.  The
evidence at the core of Zuluaga's new claims consisted of a 1981
Norfolk Superior Court order ("Weichell order") in which
Massachusetts Superior Court Judge Robert Mulkern dismissed an
indictment -- wholly unrelated to Zuluaga's case many years later
-- for first degree murder against Frederick Weichell due to the

---

[4] Zuluaga asserted that the search of his property had been
unconstitutional and that he had received ineffective assistance of counsel in
both his trial and appellate proceedings.

misleading grand jury testimony in 1980 ("1980 testimony") of an unidentified Massachusetts State Trooper assigned to lead the investigation.  (Supp. Answ., Tab 10, R. 103.)

According to the Weichell order, the trooper presented "flagrantly false information" to the grand jury that greatly exaggerated the certainty with which four different witnesses had identified Weichell as the shooter in the case.  (Id.)  Judge Mulkern wrote:

> The grand jury testimony was, for whatever reason, seriously in error in material matters. [The trooper's] misleading testimony had to leave the clear impression on the grand jury that four witnesses had made rather firm identifications of the defendant both from a photographic array and in a quasi-lineup situation.  This was simply not so.

(Supp. Answ., Tab 10, R. 100.)  Following the dismissal, Weichell was later re-indicted based on the same trooper's testimony before another grand jury and eventually convicted of first degree murder.  See Commonwealth v. Weichell, 390 Mass. 62 (1983).  Significantly, nowhere in the order (or the subsequent appellate decision) did Judge Mulkern name the trooper who supplied the misleading testimony.

Nonetheless, it was later revealed that the trooper to whom the Weichell order referred was John R. Sprague, the same trooper

involved in Zuluaga's arrest.[5]  Zuluaga did not learn of Sprague's 1980 testimony until May 7, 2004, when he read a *Boston Herald* article by Jonathan Wells published on July 16, 2002, which identified Sprague as the trooper referenced in Judge Mulkern's order.  (Supp. Answ., Tab 10, R. 93.)

In his second motion for a new trial, Zuluaga argued, among other things, that the district attorney's suppression of information pertaining to the 1980 testimony and the <u>Weichell</u> order constituted a violation of <u>Brady v. Maryland</u>, 373 U.S. 83 (1963).  The motion judge, Judge Whitehead, denied Zuluaga's second motion for a new trial with a one-paragraph endorsement on the docket in which he did not cite to a single Massachusetts or federal case.  The Massachusetts Appeals Court affirmed the denial, noting that it concurred with Judge Whitehead's reasoning.  The Supreme Judicial Court denied Zuluaga's subsequent appeal without comment.

Zuluaga filed this petition on September 14, 2005.  In his petition, Zuluaga makes three claims for relief.  Two related to Sprague's 1980 testimony.  The third related to the trial court's denial of Zuluaga's attempt to introduce Brathwaite's out-of-court statement.  On February 10, 2006, the Court dismissed the

---

[5] It is unclear from the record when this information first became public.

third ground as time-barred.  The two claims relating to
Sprague's 1980 testimony are the subject of this order.

III. **DISCUSSION**

    A.   **Standard of Review**

    The parties disagree about what standard of review should
apply.  Respondent argues that under the Antiterrorism and
Effective Death Penalty Act of 1996 ("AEDPA"), Zuluaga's claims
should be reviewed pursuant to 28 U.S.C. § 2254(d).  Under AEDPA,
federal courts may not grant state prisoners habeas relief with
respect to any claim that has been adjudicated on the merits in
state court proceedings unless the adjudication of the claim: 1)
resulted in a decision that was contrary to, or involved an
unreasonable application of clearly established federal law as
determined by the Supreme Court; or 2) resulted in a decision
that was based on an unreasonable determination of the facts in
light of the evidence presented in the state court proceeding.
See Williams v. Taylor, 529 U.S. 362, 404 (2000); Healy v.
Spencer, 453 F.3d 21, 25 (2006); Ellsworth v. Warden, 333 F.3d 1,
4 (1st Cir. 2003); McCambridge v. Hall, 303 F.3d 24, 34-35 (1st
Cir. 2002).  Zuluaga argues that this Court should review his
claims de novo pursuant to Fortini v. Murphy.  257 F.3d 39, 47
(1st Cir. 2001); see also Ellsworth, 333 F.3d at 4; McCambridge,
303 F.3d at 35.  The parties agree that the question turns on

whether the state court adjudicated Zuluaga's constitutional

claim under <u>Brady</u> or on non-constitutional grounds.

It is a close question.  The Massachusetts courts ruling on

Zuluaga's second motion for a new trial provided little more than

a cursory review of Zuluaga's claims.  The trial judge hearing

Zuluaga's claim in the first instance wrote:

> [T]he court denies the motion for this
> reason: The newly discovered information
> never would have been admissible at any stage
> of the defendants [sic] case.  Prior bad acts
> are not admissible to impeach a witness and,
> even if they were, these prior bad acts,
> assuming that they occurred, were so remote
> in time to defendants [sic] prosecution, that
> they would carry no evidentiary weight.
> Stated simply, the newly discovered
> information could not possibly have affected
> the outcome of the case.

(Supp. Answ., Tab 10, R. 9-10.)  The Massachusetts Appeals Court

affirmed.  Its opinion reads in its entirety:

> The defendant's motion for a new trial based
> upon newly discovered evidence was denied by
> the judge who conducted the original trial.
> He explained his reasoning in a notation
> which was entered on the docket.  A. 10, 316.
> See also Commonwealth's brief at page 8.  We
> agree with the judge's analysis and affirm
> for the reason he set forth.

<u>Commonwealth v. Zuluaga</u>, 63 Mass. App. Ct. 1114 (table) (2005)

(unpublished).  Neither court cited a single state or federal

case.[6]  The Court must now decide whether these truncated rulings

---

[6] The Supreme Judicial Court affirmed without comment.

constitute an adjudication on the merits of Zuluaga's <u>Brady</u> claim.

In <u>Fortini</u>, the First Circuit held that federal courts apply a de novo standard – rather than the more restrictive standard in § 2254(d) – in cases where a petitioner's constitutional claims have not been adjudicated on the merits in the underlying state proceedings.  257 F.3d at 47.  Two years later, in <u>Ellsworth</u>, 333 F.3d at 4 n.1, the Court reaffirmed the <u>Fortini</u> rule after its continued viability was thrown into question by the Supreme Court's decision in <u>Early v. Packer</u>, 537 U.S. 3 (2002), which held that a state court need not cite, nor even be aware of, Supreme Court cases in order to adjudicate constitutional claims on the merits, "so long as neither the reasoning nor the result of the state-court decision contradicts them," <u>id.</u> at 8.

While the <u>Fortini</u> rule still has force, the expansive definition of what constitutes an adjudication on the merits has made its application less frequent.  Subsequent First Circuit cases have held that a petitioner's constitutional claims are considered "subsumed" within the state court's adjudication of his state law claims if the state court has held that the state adheres to a standard that is more favorable to the defendant than the federal standard.  <u>McCambridge</u>, 303 F.3d at 35; <u>see also</u> <u>Norton v. Spencer</u>, 351 F.3d 1, 5 (1st Cir. 2003).

The relevant standard here is the three-prong test for assessing the merits of a <u>Brady</u> claim:  "The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued." <u>Strickler v. Greene</u>, 527 U.S. 263, 281-82 (1999); <u>Healy</u>, 453 F.3d at 25.  Both state and federal courts have acknowledged that Massachusetts courts generally apply a prejudice standard that is more favorable to defendants than the federal constitutional standard under <u>Brady</u>. <u>Healy</u>, 453 F.3d at 25-26; <u>Commonwealth v. Tucceri</u>, 412 Mass. 401, 413 n.11 (1992).  Therefore, a ruling under the state law test for prejudice constitutes an adjudication on the constitutional merits for our purposes here.

Respondent argues that this Court should read the state courts' decisions as reaching Zuluaga's <u>Brady</u> claim by implicitly focusing on the prejudice prong of the <u>Brady</u> and <u>Tucceri</u> tests in dismissing his new trial motion.  It is not evident from the face of the courts' rulings, however, which standard is being employed.  The most analogous case is <u>Norton</u>.  351 F.3d at 5 (overruling district court's application of de novo review).  In <u>Norton</u>, the petitioner had discovered "new evidence" and raised <u>Brady</u> claims in his state new trial motion.  <u>Id.</u>  The Massachusetts Appeals Court refused to grant a new trial, in part

-14-

on the grounds that "[u]ndisclosed evidence that is cumulative
does not normally require a judge to grant a new trial." Id.
(citing Tucceri, 412 Mass. 401 (1992)).  Despite the Appeals
Court's brief treatment of the issue, the First Circuit
nonetheless held that the court's ruling did in fact constitute
an adjudication on the merits of the petitioner's constitutional
claims and applied the more stringent AEDPA standard.  Id.
(citing McCambridge, 303 F.3d at 35).  The same reasoning applies
here.  Though neither the original motion judge nor the Appeals
Court mentioned Brady or Tucceri by name, the motion judge's
decision clearly addressed the prejudice prong of both standards.
See Knight v. Spencer, 447 F.3d 6, 12 (1st Cir. 2006) (citing
Early, 537 U.S. at 8).

     The Court admits some discomfort in holding that the state
courts' rulings in this case constitute an adjudication on the
merits.  The conclusion, however, is unavoidable in light of the
specific circumstances of the case and post-AEDPA case law.
Here, the only issues raised in Zuluaga's second motion for a new
trial were the prosecutor's alleged suppression of the 1981 order
and Zuluaga's inability to use the information to impeach
Sprague's testimony.  Judge Whitehead's ruling, though imprecise,
could not have been addressing anything but the merits of
Zuluaga's Brady/Tucceri claim, as there were no other substantive
issues before the court.  Seen this way, the ruling -- which

-15-

finds that even if the "newly discovered evidence" had been admissible to impeach Sprague's testimony, it was unlikely to have had any real effect on the outcome of the trial -- clearly goes to the prejudice prong of the Brady/Tucceri test. See Healy, 453 F.3d at 25-26.  As such, I conclude that § 2254(d)'s deferential standard applies.

Under this deferential standard, the Court must then determine whether the state courts' conclusion that there was no prejudice was an "objectively unreasonable" application of the Brady prejudice standard or relied on an "unreasonable determination of the facts in light of the evidence presented in the state court proceeding." § 2254(d)(1)-(2); Norton, 351 F.3d 6; Healy, 453 F.3d at 26 (citing Lockyer v. Andrade, 538 U.S. 63, 75 (2003)).  "[I]f it is a close question whether the state decision is in error, then the state decision cannot be an unreasonable application." McCambridge, 303 F.3d at 36. Moreover, a "determination of a factual issue made by a State court shall be presumed to be correct.  The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

**B.   The Brady Claim**

Though striking for its brevity, the trial judge's denial of Zuluaga's second motion for a new trial laid out the court's reasoning relatively clearly: 1) evidence of Sprague's 1980

-16-

testimony would not have been inadmissible at any stage of
Zuluaga's case; 2) even if it had been admissible it would not
have carried any probative weight; and 3) thus, it could not have
affected the outcome of the trial.  In light of the facts of the
case, this Court cannot say that the trial judge's conclusion was
an unreasonable application of the <u>Brady</u> prejudice prong or an
unreasonable determination of the facts.  <u>See</u> <u>Healy</u>, 453 F.3d at
26-29.

"To establish a <u>Brady</u> violation, a habeas petitioner must
demonstrate: (1) the evidence at issue is favorable to him
because it is exculpatory or impeaching; (2) the Government
suppressed the evidence; and (3) prejudice ensued from the
suppression (i.e., the suppressed evidence was material to guilt
or punishment)." <u>Conley v. United States</u>, 415 F.3d 183, 188 (1st
Cir. 2005) (citing <u>Strickler</u>, 527 U.S. at 281-82); <u>Healy</u>, 453
F.3d at 25.

When impeachment evidence is at issue, prejudice is
evaluated in terms of the "materiality" of the evidence.  <u>Conley</u>,
415 F.3d at 188 (citing <u>Wood v. Bartholomew</u>, 516 U.S. 1, 5
(1995)).  "The suppression of impeachment evidence is 'material'
when a reasonable probability exists 'that the result of the
trial would have been different if the suppressed documents had
been disclosed to the defense.'" <u>Id.</u> (quoting <u>Strickler</u>, 527 U.S.
at 289).  "'Reasonable probability' denotes a probability to

'undermine confidence in the verdict.'" <u>Healy</u>, 453 F.3d at 25
(quoting <u>Kyles v. Whitley</u>, 514 U.S. 419, 434 (1995)).

To determine materiality, the Court evaluates the strength
of the impeachment evidence and the effect of its suppression in
the context of the entire record. <u>Conley</u>, 415 F.3d at 189
(citing <u>United States v. Bagley</u>, 473 U.S. 667, 683 (1985); <u>United
States v. Agurs</u>, 427 U.S. 97, 112 (1976)). The evidence against
Zuluaga at trial was strong: numerous police officers observed
and listened in on the alleged drug transaction over the course
of a day and later found a significant quantity of drugs in a
storage room adjacent to the travel agency from which police had
seen Zuluaga exit. In his petition, Zuluaga argues that the
disclosure of Sprague's 1980 testimony would have affected the
outcome of his criminal trial in two rather circuitous ways.
First, Zuluaga argues that the 1980 testimony would have cast
serious doubt on the assertions made by Sprague both in his
affidavit in support of the body wire warrant and in his
testimony at the "<u>Franks</u>-type" hearing, which, in turn, would
have led to a finding of intentional deception and the
suppression of the evidence obtained as a result of the search.
Second, Zuluaga argues that the information would also have shed
doubt on Sprague's testimony at the voir dire hearing that
ultimately led to the exclusion of the investigator's account of
Brathwaite's statement. The admission of Brathwaite's statement

as a statement against penal interest would have, Zuluaga argues, drastically changed the outcome of the trial.  The Court addresses both arguments in turn.

### 1.    The "*Franks*-Type" Hearing

The trial court held, and the Appeals Court agreed, that Sprague's 1980 testimony was inadmissible for purposes of impeachment as a prior bad act.[7]  Inadmissible evidence is generally not material unless it is "so promising a lead to strong exculpatory evidence that there could be no justification for withholding it."  Ellsworth, 333 F.3d at 5; see also United States v. Ranney, 719 F.2d 1183, 1190 (1st Cir. 1983).  Zuluaga has not suggested that the 1980 testimony would have somehow led to other admissible evidence relevant to his case.

As the state courts' reasoned, even if the evidence were admissible to impeach Sprague, the connection between Sprague's 1980 testimony and the trial judge's evidentiary rulings prior to and during Zuluaga's trial in 1994 is simply too attenuated to support finding that the trial judge acted unreasonably – either in his application of the prejudice prong or in his determination of the facts – in concluding that Zuluaga suffered no prejudice by the non-disclosure of the information.   This in not a case in

---

[7] It is not within the authority of a federal district judge sitting in habeas to correct misapplications of state evidentiary law unless there is a violation of federal law.  See Sanna v. Dipaolo, 265 F.3d 1, 11-12 (1st Cir. 2001).  Precluding Zuluaga from impeaching Sprague with evidence from his 1980 testimony does not rise to the level of a due process violation.  See Montana v. Egelhoff, 518 U.S. 37, 52-53 (1996).

which the undisclosed information would have directly undermined
the inculpatory statements of a key prosecution witness.  The
undisclosed evidence was of limited value at best.

Zuluaga essentially argues that evidence of the 1980
testimony would have negated Sprague's testimony at the "Franks-
type" hearing in its entirety (though he does not suggest that
any of the information on which the trial court eventually relied
was factually infirm), resulting in the suppression of the body
wire evidence.  There is no question that the suppression of the
body wire evidence would have changed the trial significantly.[8]
And it is true that "[t]he Government's suppression of
impeachment evidence . . . can warrant a new trial 'where the
evidence is highly impeaching or when the witness' testimony is
uncorroborated and essential to the conviction.'" Conley, 415
F.3d at 189 (quoting United States v. Martinez-Medina, 279 F.3d
105, 126 (1st Cir. 2002).  However, neither situation applies
here.  Zuluaga's argument ignores the fact that Sprague's
testimony at the suppression hearing as to his encounters with
Brathwaite were largely corroborated by the testimony of another

---

[8] It is an interesting question whether prejudice under Brady can be
premised on the admission of otherwise trustworthy evidence at trial.  Cf.
Stone v. Powell, 428 U.S. 465, 489-90 (1976) (Fourth Amendment's exclusionary
rule does not apply in habeas).  The Supreme Court's decision in Kimmelman v.
Morrison, however, suggests that it can.  477 U.S. 365, 379-80 (1986) (Stone
v. Powell does not bar ineffective assistance of counsel claims based on
counsel's failure to litigate a Fourth Amendment suppression claim); see also
Barry v. Ficco, 392 F. Supp. 2d 83, 94 (D. Mass. 2005).  That case's
methodology is instructive here.

State Police Officer, Thomas Greeley.[9]  Also, given 1) the length

of time between the Weichell grand jury and Zuluaga's trial and

2) the lack of any connection between the two proceedings, the

trial judge's determination that Sprague's grand jury testimony

could carry no evidentiary or impeaching weight is not

unreasonable.  See  Conley, 415 F.3d at 189 (suppressed

impeachment evidence is immaterial under Brady if the evidence

impeaches on a collateral issue).

    "One does not show a Brady violation by demonstrating that

some of the inculpatory evidence should have been excluded, but

by showing that the favorable evidence could reasonably be taken

to put the whole case in such a different light as to undermine

confidence in the verdict."  Kyles, 514 U.S. at 435.  Sprague's

1980 testimony is too tangential to undermine confidence in the

verdict.

### 2.  Brathwaite's Statement

    Zuluaga's argument that evidence of the 1980 testimony would

have led the trial judge to conclude that Brathwaite's confession

---

[9] Moreover, Zuluaga's case was not as close as he would like the Court to believe.  Even his own synopsis of the case reveals the strength of the evidence against him at trial:  "Without the evidence resulting from the body wire, the state's case would have been mere observations of a mixture of mundane, every day activities (office meetings, telephone calls, etc.) with mildly suspicious circumstances (four meetings over a two hour period with Brathwaite, three meetings with Restrepo) and the unexplained appearance of one kilogram of cocaine in a basement storage area located below and adjacent, but no belonging, to the petitioner's travel agency."  (Pet.'s Supp. Mem 22 (document # 29) (emphasis added).)  Multiple police officers had seen Zuluaga, Restrepo, and Brathwaite enter the location where the drugs were found moments before Zuluaga's arrest.

was trustworthy is similarly unconvincing.[10]  It is clear from a
review of the evidence in the record that there were several
possible reasons for the trial judge to conclude as he did.
Brathwaite's statement was inherently untrustworthy, especially
in light of the fact that Brathwaite was completely unable to
identify the officers with whom he allegedly set up Zuluaga.  The
Massachusetts Appeals Court also noted that Brathwaite 1) waited
until the eleventh hour to come forward with his statement; 2)
only changed his version of the story when told that he would be
called as a witness; 3) changed his mind about exercising his
Fifth Amendment privilege; and 4) had a strong motive to lie in
light of his incarceration since he had "expected the government
to pay him $1,000 and send him on his way."  Zuluaqa, 43 Mass.
App. Ct. at 644-45.  Sprague's testimony at the voir dire hearing
added relatively little to the court's determination and does not
seriously undermine confidence in the ruling.

    The conclusion Zuluaga urges the Court to reach -- that
there is a reasonable probability that knowledge of Sprague's
1980 testimony in a wholly unrelated matter would have led the
trial court to disregard all of the other indicia of
untrustworthiness -- is simply too speculative to satisfy Brady's

---

[10] Respondent's argument that this aspect of Zuluaga's claim has not
been exhausted lacks merit.  Zuluaga "fairly and recognizably presented to the
state courts the factual and legal bases of this federal claim," Adelson v.
DiPaola, 131 F.3d 259, 262 (1st Cir. 1997), in his Application for Leave to
Obtain Further Appellate Review.  (Supp. Answ., Tab 13, App. 107.)

prejudice requirement.  And it is certainly too speculative for this Court to deem the state courts' rulings either an unreasonable application of the law or an unreasonable determination of the facts.

### C.   <u>Confrontation Clause</u>

To the extent that Zuluaga asserts a separate claim grounded in the Sixth Amendment's Confrontation Clause based on the same non-disclosure issue, the claim lacks merit.  Zuluaga's claim is correctly framed in terms <u>Brady</u> and the Fourteenth Amendment's Due Process Clause.  The withholding of impeachment evidence in violation of <u>Brady</u> and its progeny does not give rise to a parallel violation of a criminal defendant's Sixth Amendment right under the Confrontation Clause.  The Confrontation Clause provides:  "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him"; it does not allow a criminal defendant to complain of being unable to confront a witness with information that the defendant did not even possess at the time of his trial.  Cf. <u>Crawford v. Washington</u>, 541 U.S. 36, 53 (2004) ("even if the Sixth Amendment is not solely concerned with testimonial hearsay, that is its primary object").  Thus, any claim rising under the Confrontation Clause must fail.

IV.  **CONCLUSION**

There is no doubt that the body wire evidence and Zuluaga's inability to present Brathwaite's out-of-court statement at trial were significant to the outcome of Zuluaga's trial.  Zuluaga's two theories of prejudice are simply too speculative for this Court to say that the state courts' application of the Brady/Tucceri prejudice prong was unreasonable.  It is far from clear that knowledge of the 1981 Order would have had, or should have had, any material effect on the outcome of the "Franks-type" hearing or the voir dire regarding Brathwaite's statement.  Indeed, even if the Court were to review the Brady claim de novo, it could not say that Zuluaga was prejudiced by the non-disclosure of the evidence.  Therefore, Zuluaga's § 2254 petition is **DENIED.**


SO ORDERED.

Date:  January 31, 2008        /s/Nancy Gertner
                               **NANCY GERTNER, U.S.D.C.**